**STATE of Missouri, Respondent,**

v.

**James E. BOWMAN, Appellant.**

**No. 69280.**

Supreme Court of Missouri,
En Banc.

Nov. 17, 1987.

Rehearing Denied Dec. 15, 1987.

Justine E. DelMuro, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

BLACKMAR, Judge.

The defendant was convicted of murder in the first degree (felony murder) under Section 565.003, RSMo 1978,[1] for the killing of Pauline Chambers; armed criminal action (Section 571.015, RSMo 1986), stealing without consent (Section 570.030, RSMo Cum.Supp.1984), and burglary in the second degree (Section 569.170, RSMo 1986), receiving consecutive sentences including two life terms. He appealed to the Missouri Court of Appeals, Western District, which transferred the case here because the defendant challenges the constitutionality of Section 491.074, RSMo 1986, under the confrontation clauses of the Sixth Amendment, and Art. I, Sec. 18(a), of the Missouri Constitution. That challenge establishes our jurisdiction.

The only witness to implicate the defendant was Anthony Lytle, who testified that during the late evening of November 26, 1983 he and two other young men were riding in southeast Kansas City in a car driven by the defendant. About 11:00 or 11:30 PM they decided to do some "stealing," and headed for the home of Earl and Pauline Chambers, an elderly white couple, at 5801 Paseo. The defendant and his companions were black. They heard voices, apparently of black people, in the home. The shotgun was placed in the back seat but there is no evidence that it was taken into the house. When they returned, one

1. Repealed, October 1, 1984. The present statute, Section 565.021.2, RSMo 1986, defines felo- ny murder as murder in the second degree.

of their companions indicated that he had reached accord with the people inside, apparently another party of burglars. Lytle remained as lookout while the others entered and carried property out of the house. Lytle then went into the house and saw a body. One of the burglars who had been in the house, said, "Don't worry about it. We took care of him." Lytle and his companions then drove away. This is the essence of Lytle's eyewitness testimony.

The state then introduced the text of a videotaped statement Lytle had given to the police, over appropriate objection.[2] Lytle told the police that he heard conversation with "old people," and then "I hear, 'no no, no,' and then sounds of pain." The statement continued,

> I ran back to see what was going on and Eddie [the defendant] was standing there over this man I saw one stab, I saw him do the last one....

He said that the person the defendant was standing over was wearing longjohns.

Lytle at trial admitted having made these statements, but said that they were not true. He testified on cross-examination that each of the statements just quoted was a "lie." He also testified that Detective Glynn, the interrogating officer, mistreated him and told him that the defendant had already made a statement implicating him.

The bodies of Earl and Pauline Chambers were found the next morning, dead of multiple stab wounds. Pauline was wearing longjohns.[3] The medical examiner testified that Earl might have lived for as much as an hour, and Pauline for at least half an hour, after the wounding.

### I. The Admissibility of Lytle's Inconsistent Statements as Substantive Evidence

■ Section 491.074, RSMo 1986, effective July 19, 1985, reads as follows:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566, or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

This statute provides explicit authority for receiving Lytle's prior inconsistent statements as substantive evidence against the defendant, even though at trial he disaffirmed these statements under oath. This admission for this purpose would mark an abrupt departure from prior Missouri practice. *State v. Granberry*, 491 S.W.2d 528 (Mo. banc 1973).

■ So that the importance of our holding will stand out, it is appropriate to observe that the defendant is being tried for statutory "felony murder," Section 565.003. *See State v. Boggs*, 634 S.W.2d 447, 456 (Mo. banc 1982). All that the prosecution need show is that he voluntarily participated in a burglary and that a person was killed during the course of commission of that burglary. The defendant suggests, however, that another group of burglars were already in the house when he and his companions entered, and that, if the Chambers were already dead or mortally wounded before he made common cause with the earlier burglars, then he could not be convicted of felony murder. Lytle's videotaped statements, expressly refuted by his trial testimony, may provide the only firm indication that the Chambers were assaulted after the defendant became involved in the burglary. Without the prior statements, then, it may be questioned whether the state could have made a case for murder, or armed criminal action, against the defendant.

The defendant invokes the confrontation clause of the Sixth Amendment, as follows:

> In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.

---

2. *See State v. Lytle*, 715 S.W.2d 910 (Mo. banc 1986).

3. The defendant, though convicted of the murder of Pauline, was acquitted of the murder of Earl.

Article I, Sec. 18(a), of the Missouri Constitution is somewhat different, reading as follows:

That in criminal prosecutions the accused shall have the right to meet the witnesses against him face to face. . . .

The state argues that the right of confrontation is fully afforded in that Lytle was present in court and subject to cross-examination, both as to his testimony from the stand and as to his extrajudicial statements. When cross-examined, he simply said, "that was a lie". When he was questioned about the videotaped statement, he explained about the representations of the interrogating officer and mistreatment.

The federal constitutional question is ruled by *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), sustaining an essentially similar California statute. The applicability of that case might be questioned because the inconsistent statements which were introduced consisted of sworn testimony from a preliminary hearing where the defendant had the opportunity for cross-examination. The court, however, indicated its express rejection of *People v. Johnson*, 68 Cal.2d 646, 68 Cal.Rptr. 599, 441 P.2d 111 (1968), *cert. denied, California v. Johnson*, 393 U.S. 1051, 89 S.Ct. 679, 21 L.Ed.2d 693 (1969), which found constitutional error in admitting ex parte inconsistent statements under the statute. *Green* clearly covers the situation before us.

Our state constitutional provisions remain. We have found no discussion in the case law as to whether the slight differences in phrasing portend a different construction, and we need not answer that question. We have the duty of giving our state constitutional provisions vitality, in accordance with the intent of the voters and their plain language. We conclude that the statute is not violative of the state Constitution.

4. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

5. *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514, 528 (1986), stating that even statements which do not fall within a "firmly rooted hearsay exception" may meet

The question of extrajudicial statements as substantive evidence has been sharply debated in our courts. *State v. Granberry, supra*, was decided in the setting of a criminal case. The argument in favor of admissibility was stated in the concurring opinion of Judge Finch. More recently, in *Rowe v. Farmers Insurance Co., Inc.*, 699 S.W.2d 423 (Mo. banc 1985), the majority of the Court departed from prior Missouri precedent in holding that prior inconsistent statements may be received as substantive evidence. Judge Billings in dissent eloquently expressed the argument for the conventional rule. As is pointed out in *Green, Granberry* and *Rowe*, respected writers on evidence law argue that prior admitted statements of a witness who is subject to cross-examination have sufficient indicia of reliability to warrant their admission as substantive evidence.

With this state of the authorities, we believe that there is room for legislative judgment. The confrontation clause has never been held to preclude the recognition of exceptions to the hearsay rule.[4] Nor is there any reason to assume that all appropriate exceptions have already been defined.[5] We are unwilling to set aside the legislature's expressed choice. The jury may weigh the out-of-court statements against the trial testimony, Lytle's explanations, and his possible perception of advantage, in implicating the defendant, are likewise for the jury to consider.

## II. Procedural Details

The defendant argues that the state failed to lay a proper foundation for "impeaching" Lytle, by showing surprise or hostility. The state knew that he would not confirm from the stand that part of his statement to the police about having seen Bowman stab a person.

■ The old rule about impeachment of one's own witness is inappropriate, in view

confrontation clause standards if supported by "particularized guarantees of trustworthiness". Such a guarantee is apparently considered to have been found in the opportunity for cross-examination.

of the statute. Inconsistent statements are available as substantive evidence, and may be used just as soon as the inconsistency appears from the testimony. The only necessary foundation is the inquiry as to whether the witness made the statement,[6] and whether the statement is true. Any requirement of additional foundation would dilute the effect of the statute.

■ The defendant also complains about the use of the videotape, after Lytle admitted making the statements. Inasmuch as the statement constitutes substantive evidence, the jury should have it in the best form for judging its credibility. Lytle, furthermore, claimed that he had been pressured and abused by the interrogating officer, and the tape better enabled the jury to resolve this claim. *See, State v. Foster,* 700 S.W.2d 440, 443 (Mo. banc 1985). The defendant is entitled to protection against unnecessary and duplicative bolstering, *State v. Seever,* 733 S.W.2d 438 (Mo. banc 1987), but this record demonstrates no abuse of discretion.

This is not the place to resolve all of the problems about inconsistent extrajudicial statements as substantive evidence. *California v. Green* mentions the possible situation in which the witness may not be effectively cross-examined because of lack of memory. 399 U.S. at 170, 90 S.Ct. at 1941. Here the defendant simply said that he lied to the officer under coercive conditions. We can also conceive of a situation in which the only evidence against a defendant might be found in an extrajudicial statement of another suspect. *See State v. Granberry, supra,* 491 S.W.2d at 533, Finch, Ch.J. concurring. *See also* Blackmar, *"The Proposed Federal Rules of Evidence—How Will They Affect the Trial of Cases,"* 27 Wash. & Lee L.Rev. 17 (1970). A trial judge undoubtedly possesses his usual discretion to exclude evidence which

seems wholly unsubstantial or speculative. Here, however, there is ample evidence that the defendant participated in the burglary and assisted in carrying out the loot. He had a weapon in his car, which he brought to the scene. On the following day he told the sister of one of his companions that "homicide" (meaning perhaps the officers of the homicide bureau) was up the street and that he had to get rid of the "stuff." Lytle's statement to the police was distinctly against his own interest, because it showed that the stabbing occurred after he had become a willing participant in the burglary, and established his guilt on a felony murder charge.

We conclude that, under the statute, the jury could decide whether Lytle was telling the truth in his videotaped statement, or whether his testimony in court was true. This holding may be a hard dose for lawyers trained in the old tradition to swallow, but it represents a choice made by the legislature with ample support among evidence scholars. The state may not persuade us that there is a basis for finding guilt of first degree murder, or of armed criminal action, apart from Lytle's extrajudicial statements, but, by reason of the statute, there was a case for the jury and the court did not err in overruling the motion for judgment of acquittal.

### III. Voir Dire and Instructions

■ The defendant complains that he was not allowed to explain to the jury during voir dire that he could be held liable for murder only if the killing was effected after he entered into participation in the burglary. The state had previously asked the jurors whether they had problems with the "felony murder" rule. The appellant fails to demonstrate an abuse of discretion. Voir dire is not the place to instruct the jury in detail.[7] We may assume that the

6. We express no opinion as to whether inconsistent statements may be used as substantive evidence in criminal cases if the witness does not admit making them, or declines to submit to cross-examination. *See Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), holding that such statements of a witness who takes the Fifth Amendment may not

be used. *See also* Note, *Missouri's New Evidentiary Rules—Use of Prior Inconsistent Statements as Substantive Evidence and For Impeachment of One's Own Witness,* 52 Mo.L.Rev. 191 (1987).

7. *See State v. Smith,* 649 S.W.2d 417, 428 (Mo. banc 1983) *cert. denied* 464 U.S. 908, 104 S.Ct.

jury will not prejudge legal questions and will follow the instructions of the court.

The defendant also complains that the instructions did not tell the jury with sufficient clarity that the defendant could not be found guilty of murder in the first degree if the other burglars had already killed the victims before the defendant and his companions joined them. The case as to the killing of Pauline Chambers was submitted by the following instructions:

As to Count III, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about November 27th, 1983, in the County of Jackson, State of Missouri, the defendant or other persons caused the death of Pauline Chambers by stabbing her, and

Second, that the defendant or other persons did so in committing or attempting to commit a burglary at 5801 Paseo, Kansas City, Missouri,

then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of burglary in the second degree, the defendant acted together with or aided other persons in committing that offense,

then you will find the defendant guilty under Count III of murder in the first degree.

The defendant offered an instruction which added at the end of the third paragraph the statement, "prior to the stabbing of Pauline Chambers." The court refused the modified instruction.

The court also gave the following instructions:

If you do not find and believe from the evidence beyond a reasonable doubt that defendant was acting together with or aiding other persons in committing or attempting to commit the crime of burglary at 5801 Paseo, Kansas City, Missouri, *at the time Pauline Chambers*

*was stabbed,* you must find the defendant not guilty under Count III of murder in the first degree. (Emphasis supplied).

The defendant argues that the phrase "at the time Pauline Chambers was stabbed" should have been modified to read "prior to the stabbing of Pauline Chambers."

■ The defendant of course is entitled to a submission which will amply explain the governing legal rules to the jury so that they may make appropriate findings. We believe, however, that the Instruction last quoted correctly states the law. By reason of the statute adopting the felony murder doctrine a participant in a burglary is guilty of murder if there is a killing during the course of the burglary. This is so even though the defendant had no purpose of killing and knew nothing about the killing. The legislature apparently concluded that there was sufficient danger of killing to warrant murder convictions for all participants in a burglarious expedition. Momentary participation is sufficient.

■ Here the jury might find that a burglary was in progress before the defendant and his companions entered the house, and that the defendant and his companions associated themselves with that burglary. The instructions read together clearly told the jury that it could find the defendant guilty of murder only if the defendant were a part of the burglary *at the time Pauline Chambers was stabbed.* The jury was told that it had to acquit if it could not make the indicated affirmative finding. The difference between "at the time" and "prior to" is not significant. The instruction sufficiently allowed the defendant to present his theory that the prior burglars had completed the killings, or struck fatal blows, before he joined them.

The claim that MAI–CR 1.02 and 2.20 improperly define reasonable doubt has been repeatedly rejected. *State v. Guinan,* 732 S.W.2d 174, 177 (Mo. banc 1987). The Court adopted an authoritative definition at the urging of the legislature.

262, 78 L.Ed.2d 246 (1983); *State v. Henderson,*    547 S.W.2d 141, 143 (Mo.App.1976).

There was no error in admitting a photograph of a television set found in the house of one of the burglars on the basis of the testimony of a witness who knew the Chambers and said that the picture "looked like" the set in their kitchen. There is ample evidence that the defendant and his companions stole from the Chambers' home. The cumulative evidence in the form of the picture was not prejudicial.

The judgment is affirmed.

BILLINGS, C.J., and WELLIVER, ROBERTSON and RENDLEN, JJ., concur.

DONNELLY, J., dissents in separate opinion filed.

HIGGINS, J., not participating.

DONNELLY, Judge, dissenting.

In my view, section 491.074, RSMo 1986, violates Mo.Const. art. I, § 18(a) and is unconstitutional. *See Rowe v. Farmers Insurance Co., Inc.*, 699 S.W.2d 423, 430 (Mo. banc 1985) (Donnelly, J., concurring).

I respectfully dissent.