**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Ronald OLIVER, Defendant–Appellant.**

**No. 53716.**

Missouri Court of Appeals,
Eastern District,
Division Two.

June 30, 1989.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Aug. 15, 1989.

Application to Transfer Denied
Sept. 12, 1989.

Gregory and Ronald left the apartment and Palmer followed them outside of the building where Ronald forced Palmer into his car at gunpoint. After being held captive in the car for some time, Palmer was able to escape. The brothers proceeded to the home of Diane Moore in the 3500 block of Fair. Moore, Andrew Chambers, James Crate and several children were in the apartment. Gregory carried a can of gasoline which he splashed on the floor and threatened to ignite. Moore wrested the gas can from Gregory and went to the kitchen to dispose of it. As Moore came out of the kitchen she saw Ronald emerge from the bathroom, stand behind James Crate, who was seated on a footstool, and shoot him in the head. Moore yelled at Ronald who turned and shot her four times. Crate died; Moore and Chambers were injured in the attack. The defendants were arrested shortly thereafter.

Gregory and Ronald were jointly tried before a jury. Ronald relied solely on the defense of mental disease or defect. The jury found both defendants guilty of first degree murder, first degree assault and found Ronald guilty of kidnapping. The defendants' motion for a new trial was denied and now Ronald appeals his conviction.

 In his first point the defendant argues that the trial court erred in allowing the state to impeach its own witness with her prior inconsistent statements. The statements at issue are those made by Elizabeth Palmer, a witness for the state. Palmer testified that she was kidnapped by the Olivers, driven around St. Louis and eventually escaped. Palmer was asked by the state on direct examination if she had made any statements to police or anyone else regarding the Olivers' planned destination and deeds. Palmer denied making any such statement. Using Section 491.074, RSMo 1986, as authority the state presented evidence of prior inconsistent statements made by Palmer to two police officers and two other persons. Each of these witnesses testified that Palmer told them she had been told by the Olivers while being held captive that they were going to

David O. Fischer, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant Ronald Oliver was convicted by a jury of murder in the first degree, assault in the first degree and kidnapping. He was sentenced to two consecutive life terms plus fifteen years. He appeals and we affirm.

On the evening of June 6, 1985 the defendant Ronald Oliver went to the home of Elizabeth Palmer. His brother, codefendant Gregory Oliver had been there for some time. Ronald watched as Gregory, Elizabeth and several other persons played cards. For no apparent reason Ronald kicked out a window, produced a .38 caliber pistol and fired one shot into the ceiling of the apartment and one into the fireplace.

an address on Fair Street to kill some people. Defendants argue that this is improper impeachment and application of Section 491.074.

The rule in Missouri has been, until recently, that a party could not impeach its own witness in a civil or criminal trial absent a showing that the witness is hostile. *State v. Byrd*, 676 S.W.2d 494, 502 (Mo. banc 1984). When such impeachment was proper, prior inconsistent statements were not admissible as substantive evidence. *State v. Granberry*, 491 S.W.2d 528, 531 (Mo. banc 1973). In 1985 the Missouri Legislature enacted Section 491.074 which provides:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

That same year our Supreme Court abrogated the traditional rule against impeaching one's own witness with his prior inconsistent statements in civil cases. Additionally, the court held that such statements could be used as substantive evidence provided the declarant is available for cross-examination. *Rowe v. Farmers Insurance Co., Inc.*, 699 S.W.2d 423, 425 (Mo. banc 1985).

Two years later the Supreme Court had an opportunity to consider the *Rowe* rationale in a criminal setting. In *State v. Bowman*, 741 S.W.2d 10 (Mo. banc 1987) the defendant argued that the state failed to lay a proper foundation for impeachment of its own witness by showing surprise or hostility. The court stated:

> The old rule about impeachment of one's own witness is inappropriate, in view of the statute. Inconsistent statements are available as substantive evidence, and may be used just as soon as the inconsistency appears from the testimony. The only necessary foundation is the inquiry as to whether the witness made the statement, and whether the statement is true. Any requirement of

additional foundation would dilute the effect of the statute. *Id.* at 13–14 (footnote omitted).

However, *Bowman* does not resolve the issue pending before us. The *Bowman* court specifically declined to express an opinion as to whether inconsistent statements may be used as substantive evidence if the witness does not admit making them or declines to submit to cross-examination. *Id.* at 14 n. 6. For the reasons stated below we hold that in a criminal case, the prior inconsistent extrajudicial statements of a witness may not be admitted as substantive evidence when the witness denies at trial having made the statements.

In his incisive dissent in *Rowe* Judge Billings recognized the potential for abuse in the admission of extrajudicial prior inconsistent statements as substantive evidence. The risk of distortion, fabrication and undue influence in the recordation of witness statements by overzealous police officers and prosecutors is ever present. *Rowe*, 699 S.W.2d at 435. The admission of fabricated or inaccurate statements as substantive evidence over the repudiation of those statements by the alleged declarant may, in cases where other evidence is lacking, allow a party to permissively indulge in establishing an essential element of a crime by the applicable quantum of proof. *Id.* at 429. The potential for conviction on the basis of a statement which is denied by the person to whom it was imputed cannot be tolerated.

The *Bowman* court also indicated that the use of prior inconsistent statements as substantive evidence in criminal cases where the witness denies making them may run afoul of the Confrontation Clause. *Bowman*, 741 S.W.2d at 14 n. 6 *citing Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). In *Douglas* the Supreme Court found that when a witness, in response to questions regarding whether or not he made a particular statement, asserts his Fifth Amendment privilege against self-incrimination, the ability to cross-examine that witness is, in effect, foreclosed. "Similarly, [the witness] could not be cross-examined on a statement im-

puted to but not admitted by him. Nor was the opportunity to cross-examine the law enforcement officers adequate to redress this denial of the essential right secured by the Confrontation Clause." *Id.* at 419–420.

■ On direct examination Palmer emphatically denied making any statement regarding the Olivers' purported destination and plan to police officers or anyone else. That denial, in effect, foreclosed any opportunity for cross-examination in regard to the content of the statement. When the issue was pursued by introduction of the officers testimony, the crucial inquiry became whether Palmer made the statement or not. This dispute is collateral to the issue of substantive evidence and examination in that regard should not have been pursued. *See* Note, Missouri's New Evidentiary Rules—Use of Prior Inconsistent Statements as Substantive Evidence and for Impeachment of One's Own Witness, 52 Mo.L.Rev. 191, 204 (1987). We find that the admission of Palmer's prior inconsistent statements as substantive evidence under Section 491.074 after she denied making those statements was error. However, such error was not prejudicial.

Strong evidence of premeditation was elicited at trial by eyewitness testimony. That testimony revealed that the defendant entered the home of Diane Moore armed with a concealed gun, walked into the apartment, used the bathroom, then stood behind Crate and shot him in back of the head. No provocation by Crate was shown. Such solid evidence of premeditation was sufficient to find the defendant guilty as charged and the admission of the inconsistent statements under the facts of this case was not prejudicial.

■ The defendant also argues in Point I that Section 491.074 applies only to cases arising under Chapters 565, 566 and 568, RSMo, in which a child is a victim or witness. This argument is made for the first time on appeal. The record reveals that no objection on this ground was offered at trial nor did the defendant move for a new trial on this basis. A defendant may not broaden his trial objections on appeal.

*State v. Webb,* 725 S.W.2d 901, 904 (Mo. App.1987). Because the issue has not been properly preserved we review only for plain error. Rule 29.12(b).

The legislature is presumed to have intended what the statute says and if language is clear and unambiguous there is no room for construction. *State v. Nevels,* 712 S.W.2d 688, 690 (Mo.App.1986). Had the legislature wished to so limit the application of the statute, it would have done so by the language of the statute. Further, the courts of this state have consistently applied this statute to adult witnesses. *See State v. Bowman,* 741 S.W.2d 10 (Mo. banc 1987); *State v. Ayers,* 724 S.W.2d 556 (Mo. App.1987); *State v. Roberts,* 738 S.W.2d 606 (Mo.App.1987); *State v. Dunn,* 731 S.W.2d 297 (Mo.App.1987); *State v. Moutray,* 728 S.W.2d 256 (Mo.App.1987). We find no plain error and defendant's point is denied.

■ In his second point the defendant argues that the trial court erred in failing to quash the jury panel or declare a mistrial on the ground that the state's exercise of peremptory challenges violated principles set forth in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Defendant argues that he made a prima facie case of racial discrimination in the state's exercise of peremptory challenges which the state failed to rebut by coming forth with legitimate race-neutral reasons for these strikes.

In order to establish a prima facie case of racial discrimination under *Batson* the defendant must show first that he is a member of a cognizable racial group and that the prosecutor exercised his peremptory challenges to remove members of the defendant's race from the venire. Second, the defendant is entitled to rely on the undisputed fact that peremptory challenges allow prosecutors who are inclined to discriminate to do so. Finally, the defendant must show that these facts and other relevant circumstances raise an inference that the prosecutor used that practice to exclude veniremen on account of their race. Once a prima facie case is made, the burden shifts to the state to come forward

with a race-neutral reason for striking the jurors. *Id.* 106 S.Ct. at 1723.

As a practical matter, the trial court must consider the state's explanation for exercising peremptory challenges as part of the process of determining whether the defendant has established a prima facie *Batson* case. *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987). To determine the validity of the reasons given, the judge should review the totality of the circumstances to decide whether a neutral explanation is merely a pretext for racial discrimination. *Id.* The trial judge must assess the entire mileu of the voir dire both objectively and subjectively and base his decision on all the information and intuitive perceptions he has gathered. *Id.* Great deference is to be afforded the trial court and its decision will not be reversed on appeal unless it is clearly erroneous. *Id.* at 66.

Our resolution of this issue is greatly aided by the commendable effort made by the trial court in making detailed and articulate findings of fact. It is not disputed that the defendant was black and that the prosecutor used eleven peremptory challenges to remove blacks from the jury panel. The sitting jury was comprised of five blacks and eight whites. The court denied the defendant's motion to quash the jury panel finding that the defendant failed to make a prima facie *Batson* case. However, the prosecutor was permitted to set forth his reasons for his peremptory challenges for the record. The trial judge in his memorandum and order denying the defendant's motion for a new trial made extensive findings of fact on the *Batson* issue. We have carefully reviewed the record of voir dire, as well as the findings made by the judge. Affording due deference, we find that the decision of the trial court is not clearly erroneous. We have recently recognized that there are practical limitations to the application of *Batson.* Here, the fact that there were five blacks remaining on the jury undercuts any inference of discrimination. *State v. Crump*, 747 S.W.2d 193, 196 (Mo.App.1988); *State v. McCrady*, 752 S.W.2d 430 (Mo.App.E.D. 1988). The defendant failed to make a prima facie case and his second point is denied.

■ In his third point the defendant argues that the court committed reversible error in refusing to grant a continuance when the state, prior to trial, filed a memorandum of nolle prosequi as to Count III, the assault against Andrew Chambers. Defendant argues that this "surprise move" was "incredible if not even suspicious" and mandated a continuance in order to allow counsel to evaluate the nolle prosequi on his defense.

On this issue, the defendant bears an onerous burden. The granting of a continuance is a matter within the sound discretion of the trial court. *State v. Wade*, 666 S.W.2d 869, 871 (Mo.App.1984). An appellant must make a very strong showing that the trial court abused its discretion in denying the continuance and that prejudice resulted from such denial. *State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985), *cert. denied*, 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986); *State v. Richardson*, 718 S.W.2d 170, 172 (Mo.App.1986).

The defendant concedes that Chambers was one of two eyewitnesses whose testimony would be adverse to his case. He also acknowledges that Chambers had been deposed prior to trial and that counsel had an opportunity to review that deposition. Defendant, however, contends that the reason behind the state's action was Chambers' refusal to testify. Defendant argues that he needed extra time to ferret out any improper motives or questionable implications of Chamber's decision not to testify.

Defendant's conclusions are groundless. There is nothing in the record to indicate any such motivation behind the state's decision. Nothing in the record indicates that Chambers was not amenable to subpoena. Thus the defendant could have called Chambers to testify if he so desired. Other than unsupported conclusory statements, the defendant fails to show how he was prejudiced by the denial of a continuance. If anything, the elimination of the testimony of an adverse eyewitness was

beneficial to the defendant. We find no abuse of discretion. Point denied.

In Count IV defendant argues that the trial court erred in failing to grant a severance upon defendant's motion. Defendant seems to argue that he was prejudiced by a joint trial in two ways: First, he was forced to have a jury trial; and second, he was subjected to a trial where the defenses of his codefendant, Gregory, were "inconsistent, mutually exclusive and irreconcilable."

Rule 24.06(a) in effect at the time of trial provided:

If two or more defendants could have been joined in the same indictment or information but they are charged in separate indictments or informations, the court may order the defendants to be tried jointly upon motion of any party.

The defendants were charged in separate indictments. The state filed a motion to join the defendants and the motion was eventually granted. The defendants moved for severance and their motion was overruled.

█ Defendant Ronald Oliver sought severance in part because he wanted a bench trial. Counsel felt that Ronald's defense was complex and was best tried before the court. However, Gregory, who denied involvement in the crime, sought a jury trial.

The trial court found that the best interests of defendant would best be served by a jury trial. An accused has no absolute right to a bench trial. *State v. Smith*, 735 S.W.2d 65, 67 (Mo.App.1987). Only with the consent of the trial court can a defendant receive a bench trial. *Polys v. State*, 724 S.W.2d 265, 267 (Mo.App.1986). Defendant directs us to no evidence on the record that indicates the jury was unable to comprehend the expert testimony or grasp the complexity of Ronald's defense.

Defendant also argues that the trial should have been severed because his defense was antagonistic to, and in irreconcilable conflict with, that of his codefendant. The end result of this conflict, argues defendant, is that the jury was unable to separate the evidence and properly apply it

to the appropriate defendant. The cases to which defendant directs our attention support the state's position.

█ On review the decision of the trial court to deny a defendant's motion for severance will be reversed only upon a showing of clear prejudice or abuse of discretion. *U.S. v. Reeves*, 674 F.2d 739, 744 (8th Cir.1982). It is true that a trial court has a duty to sever trials if there are codefendants with mutually antagonistic defenses to preserve their right to a fair trial. *U.S. v. Aquiar*, 610 F.2d 1296, 1302 (5th Cir.1980), *cert. denied* 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1980). However, the doctrine is limited. The governing standard requires the defendant to show that the defendants' present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that the conflict alone demonstrates that both are guilty. *U.S. v. Haldeman*, 559 F.2d 31, 71 (D.C.Cir.1976) *cert. denied* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

In *U.S. v. Butler*, 494 F.2d 1246 (10th Cir.1974) the court found that the defendant, who was convicted by a jury of conspiracy, should have received a separate trial. The indictment charged the defendant along with twenty-three other persons with one conspiracy. At trial it became clear that three distinct and separate conspiracies occurred. On review the court found no evidence in the record to implicate the defendant in the conspiracy with which he was charged. Because the court found no evidence to link several of the defendants to all of the conspiracies it concluded that there was a great "possibility that the issue of [Reinke's] guilt was confused and the guilt of other defendants involved in unrelated transactions at different times and in different places." *Id.* at 1257.

In *Reeves*, 674 F.2d at 744 the defendant was convicted of conspiracy and argued on appeal that the complexity of the case prevented the jury from considering the evidence on each charge against each individual defendant. The court noted that severance is required when proof is such that the jury cannot be expected to compart-

mentalize the evidence as it relates to the separate defendants. In finding that the court did not abuse its discretion in refusing to sever the trials, the appellate court considered several factors. The evidence of the defendant's guilt was overwhelming. Numerous instructions given by the court protected the defendant from overflow of evidence from one defendant to another. The issues involved were not so complicated as to go beyond the jury's ability to consider the evidence as to the guilt of each defendant individually. Finally, the court noted that nothing on the record indicated that the jury was confused.

Similar factors exist in this case. The evidence of Ronald's guilt is overwhelming. The instructions given to the jury were sufficient to protect defendant and required independent finding of guilt as to the defendant. The evidence adduced at trial was not difficult to compartmentalize. The strategy taken by Ronald at trial was not to deny commission of the acts, rather, to argue that he should not be held responsible for them. Gregory's testimony was that he was with Ronald when the crime occurred but did everything in his power to stop him. The two defenses are not inconsistent. Further, there is nothing in the record that indicates confusion or difficulty on the part of the jury in compartmentalizing the evidence. The defendant has failed to show how he was prejudiced by a joint trial and his point is denied.

In Point V the defendant argues that the trial court erred in allowing the state to introduce improper rebuttal evidence. He argues that the testimony of Pierre Davis was cumulative of evidence which had already been presented in the state's case in chief and as such should not have been permitted. As part of its case, the state offered the testimony of Elizabeth Palmer who stated that she was forced into Ronald Oliver's car at gun point. Gregory Oliver, as part of his defense, testified that Palmer got into the car voluntarily. In rebuttal the state elicited testimony from Pierre Davis who stated that he saw Ronald point a gun at Palmer while they were standing by the car.

Rebuttal testimony is any competent testimony that tends to explain, counteract, disprove or refute evidence offered by the defendant. *State v. Ramsey*, 710 S.W.2d 459, 461 (Mo.App.1986). The admission and scope of rebuttal testimony is within the discretion of the trial court. *Id.* Davis' testimony refuted the evidence offered by Gregory Oliver and was proper rebuttal. Point denied.

The judgement of the trial court is affirmed.

STEPHAN and DOWD, JJ., concur.