STATE of Missouri,
Plaintiff/Respondent,

v.

Webster HOLMES, Defendant/Appellant.

Webster HOLMES, Movant/Appellant,

v.

STATE of Missouri,
Respondent/Respondent.

Nos. 60084, 61579.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 19, 1993.

Emily N. Blood, Marilynn Rydlund, St. Louis, for appellant.

William L. Webster, Atty. Gen., Aundreia R. Alexander, Asst. Atty. Gen., Jefferson City, for respondent.

REINHARD, Judge.

Defendant appeals his convictions by a jury for second degree murder, § 565.021, RSMo 1986, and armed criminal action, § 571.015, RSMo 1986, for which he was sentenced by the court as a prior offender to consecutive prison terms of 30 years and 15 years respectively. After sentencing, defendant filed a *pro se* Rule 29.15 motion, which was later amended after appointment of counsel. The trial court denied the motion after an evidentiary hearing. Pur-

suant to Rule 29.15(1) these appeals have been consolidated for review.[1] We affirm.

Defendant, victim, the State's eyewitness, and defendant's two alibi witnesses were all either deaf or hearing impaired and communicated by use of sign language. Three interpreters were used during trial. One interpreted the questions of the State and defense counsel for the witnesses; one interpreted all the witnesses' answers verbally back to the court and jury; and one, the defendant's interpreter, sat at the defense table and acted as an interpreter between defense counsel and defendant. Defendant's interpreter also verified the accuracy of the translation of questions posed to witnesses and answers signed by deaf witnesses.

The sufficiency of the evidence is not at issue in this case, however a recitation of some testimony and evidence is essential to resolve the issues raised. Carmen Sleet, a cashier, testified that at approximately 8:00 p.m. on January 30, 1989, victim entered Salama's Market at Shaw and 39th Streets in St. Louis, cashed a check for over $100, and began playing video games located in the store. Shortly thereafter, defendant, dressed in a black hat with writing on it, joined victim and an argument ensued. The two men left Salama's together at approximately 8:15 p.m.

Sandra Woods testified that she was friends with the victim, Lavon Thomas. She stated that at 11:00 p.m. on January 30, 1989, she was talking to the victim at the corner of Shaw and Russell Streets in St. Louis when they were approached by defendant, a man she knew as Webster Holmes. When defendant and the victim began arguing, Ms. Woods became scared and hid behind a nearby tree. On direct examination, she testified that she saw defendant stab victim. Later, she stated that she observed defendant holding a knife up to victim's body and that "there was blood all over." However, on cross-examination she stated she did not observe the actual stabbing, but saw defendant with the knife against victim's body.

The victim's body was found the next day at 1819 Thurman Avenue. His death was diagnosed as the result of two stab wounds to the upper left chest. A black cap with the logo "Magic Seal" written across the front was found approximately two feet from the victim's body and the center piece which separates the blade of a knife from its handle was located under the victim's body. At trial, Ms. Sleet identified the black hat as the one she saw defendant wearing in Salama's Market on the evening of the murder. No money was found on the victim's body.

A few days after the incident, Ms. Woods contacted the police. Defendant was subsequently arrested on February 7, 1989, and a search of his residence produced a pair of tennis shoes with blood traces on them and an empty knife sheath. There was insufficient blood on the shoes to obtain a match of victim's blood type. At the police station, defendant was read his Miranda rights and placed in a lineup where he was identified by Ms. Sheets and Ms. Woods. Defendant at first told the police that he knew victim, but hadn't seen him for two years. He later recanted and stated that he had last seen victim at a party approximately two weeks prior to his arrest. When questioned about the sheath he claimed that he had lost the knife a couple of years earlier.

At trial, defendant presented two alibi witnesses who testified as to defendant's whereabouts between 11:00 p.m. on January 30, 1991, and 1:00 a.m. on January 31, 1991.

▮ Defendant's principal contention on appeal is that the trial court erred in allowing the State to question Detective Banaszek concerning a prior statement Ms. Woods made to him about the incident because the "State did not lay a sufficient foundation to establish witness Sandra Woods' testimony as a recognized exception to the hearsay rule."

On direct examination, Ms. Woods testified that she saw defendant stab the vic-

---

1. Defendant has not briefed the allegations of error contained in his Rule 29.15 motion. We thus consider them to have been abandoned. Rule 84.13(a).

tim. She stated that she later returned to the crime scene with the police and explained to them what she saw on the evening of January 30, 1989. However, on cross-examination Ms. Woods testified that she had not seen defendant stab victim. On redirect examination Ms. Woods testified as follows:

Q: [By State's counsel] What did you mean? What did you mean by that movement that you made?

A: No, that's all. Just they were standing there and holding that up to his side.

Q: Okay. This?

A: He was holding it up to his side. [Victim]—[victim] was holding the knife up to—[defendant] was holding the knife up to [victim].

Q: Okay. Let's get this straight. Who was holding the knife?

A: [Defendant] was.

Q: Against whom?

A: [Defendant]—[defendant] and [victim].

COURT INTERPRETER YOUNG: To [victim]

Q: [By State's counsel] Sandra, did you tell Detective Frank Banaszek what happened?

A: Frank? Yeah. Frank.

Q: Did you tell him what happened that night?

A: Yes, yes. I don't know the name of the other policeman. I don't know his name.

Later, during the examination of Detective Banaszek, the circuit attorney attempted to elicit Ms. Woods' prior statement to him that she saw defendant stab victim. The circuit attorney's theory was that Detective Banaszek's testimony was a prior inconsistent statement made by Ms. Woods and was admissible as substantive evidence under § 491.074, RSMo 1986. Defense counsel objected on the basis that the State had not laid a proper foundation for admission of a prior inconsistent statement because Ms. Woods had not been confronted with the *details* of the statement and given a chance to admit or deny the contents thereof. The objection was overruled and

Detective Banaszek was allowed to testify that she told him she saw defendant stab victim.

■ Under the general law regarding the admissibility of prior inconsistent statements a proper foundation was not made in the present case. Asking a witness in nonspecific terms about a previous conversation does not lay a foundation to introduce a prior inconsistent statement for impeachment purposes.

> To properly lay a foundation for impeachment, it is necessary to ask the witness whether he made the statement, quoting it and pointing out the precise circumstances under which it was supposedly made, including the person to whom the prior statement was made and to the time, place, and circumstances of the prior statement.

*Eissler v. Londoff,* 677 S.W.2d 358, 360 (Mo.App.1984).

Thus, the inquiry of Ms. Woods, "Did you tell Detective Frank Banaszek what happened ... did you tell him what happened that night?", would not be sufficient to admit a statement for impeachment purposes. However, the statement in this case was admitted under § 491.074, RSMo 1986, which provides:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

Judge Blackmar discussed this statute extensively in *State v. Bowman,* 741 S.W.2d 10, 12 (Mo. banc 1987), indicating that it permitted the admission of prior inconsistent statements in circumstances where they had previously not been admissible and this constituted "an abrupt departure from prior Missouri practice." He further stated:

> The old rule about impeachment of one's own witness is inappropriate, in view of the statute. Inconsistent statements are available as substantive evi-

dence and may be used just as soon as the inconsistency appears from the testimony. The only necessary foundation is the inquiry as to whether the witness made the statement, and whether the statement is true. Any requirement of additional foundation would dilute the effect of the statute.

*Id.* at 13–14.

In a footnote the *Bowman* court noted, "We express no opinion as to whether inconsistent statements may be used as substantive evidence in criminal cases if the witness does not admit making them, or declines to submit to cross-examination." *Id.* at 14.

In *State v. Belk,* 759 S.W.2d 257 (Mo. App.1988), we reviewed a taped interview which had been offered and admitted as a prior inconsistent statement under § 491.-074. Judge Smith, writing for the court, stated:

Defendant also asserts that he was denied his right to confrontation because of Wallace's inability to recall the circumstances surrounding the taking of the statement, the substance of the statement or even that he gave a tape-recorded statement. In *State v. Bowman,* 741 S.W.2d 10 (Mo. banc 1987) the Supreme Court upheld the constitutionality of Sec. 491.074 against a challenge of lack of confrontation. It stated that the only necessary foundation is the inquiry as to whether the witness made the statement and whether the statement is true. It specifically did not express an opinion as to the use of such statements as substantive evidence where the witness does not admit making them or declines to submit to cross-examination. In *Bowman* the statements were upheld as substantive evidence even though the declarant stated at trial they were not true. It is not necessary, therefore, for the declarant to admit the truth of the statement in order to establish admissibility. We also do not believe it is necessary for the declarant, himself, to admit he made the state-

ments if from his testimony and other evidence the fact that such statements were made is established. Here Wallace did not state that he did not make the statements, he said only that he could not recall making them and if he did he lied. He admitted having been questioned by police. He listened in court to portions of the tapes and did not deny that the voice was his, although he thought he sounded different on the tape. The testimony of the police officer of the circumstances and the timing of the recording was in accord with Wallace's testimony. The officer clearly testified that the recording was made of the questioning of Wallace and was an accurate recording of that questioning. The foundation was sufficient to allow the admission of the taped statement under the statute. Wallace did not refuse to be cross-examined. We find no error in the admission of the taped statement as substantive evidence.

*Id.* at 259.

 In the present case, Ms. Woods' direct examination testimony was consistent with the prior statement given to Detective Banaszek. Furthermore, he clearly testified as to the substance of her statement made to him a week after the murder. We find no error in the admission of the statement as substantive evidence.[2] Additionally, if there had been error, the admission of the statement was harmless. Ms. Woods stated during cross-examination that she saw defendant and victim arguing and defendant holding a knife against the victim's body. Thus, it is unlikely that the admission of the prior statement affected the result.

Defendant also challenges the selection process of grand and petit juries in the City of St. Louis. This court recently upheld the grand jury selection process in *State v. Allen,* 845 S.W.2d 671 (Mo.App.1993), and the petit jury selection process in *State v.*

---

**2.** Section 491.074 and the cases following its enactment have relaxed the foundational requirements for admission of prior inconsistent statements as substantive evidence. However, we believe that specifically confronting a witness with her prior inconsistent statement remains the better practice in laying a foundation.

*Landers,* 841 S.W.2d 791 (Mo.App.1992). Point denied.

Defendant finally contends that the trial court erred when it submitted Instruction No. 4, patterned after MAI–CR3d 302.04. Defendant argues that this instruction improperly defines proof beyond a reasonable doubt as proof which leaves the jury "firmly convinced" of the defendant's guilt. This argument has been rejected by the Missouri Supreme Court. *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Griffin,* 818 S.W.2d 278, 282 (Mo. Banc 1991).

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.