No. 94-3712

James Edward Bowman,       *
                                    *
         Appellant,        *
                                    *
     v.                      *    Appeal from the United States
                                    *    District Court for the
James Anthony (Tony) Gammon,   *    Western District of Missouri.
Superintendent of the Moberly   *
Correctional Center; Jeremiah   *
W. (Jay) Nixon, Attorney      *
General of the State of       *
Missouri,                     *
                                    *
         Appellees.        *

Submitted: January 10, 1996

Filed: June 7, 1996

Before WOLLMAN, BEAM, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

WOLLMAN, Circuit Judge.

Following his conviction in Missouri state court for felony murder, stealing without consent, armed criminal action, and second degree burglary, James Edward Bowman was sentenced to two consecutive life sentences, plus seven years. After exhausting his state court remedies, he brought this action pursuant to 28 U.S.C. § 2254. Following the district court's[1] denial of his petition, we remanded for further proceedings on the basis of newly discovered evidence. The district court again denied the petition, and we now affirm.

---

[1]The Honorable Joseph E. Stevens, Jr., United States District Judge for the Western District of Missouri.

**I.**

To analyze Bowman's contentions in this appeal, we begin by setting forth the facts underlying his conviction. The Missouri Supreme Court, in Bowman's direct appeal, summarized the record as follows:

> The only witness to implicate the defendant was Anthony Lytle, who testified that during the late evening of November 26, 1983 he and two other young men were riding in southeast Kansas City in a car driven by [Bowman]. About 11:00 or 11:30 PM they decided to do some "stealing," and headed for the home of Earl and Pauline Chambers, an elderly white couple, at 5801 Paseo. [Bowman] and his companions were black. They heard voices, apparently of black people, in the home. The shotgun was placed in the back seat but there is no evidence that it was taken into the house. When they returned, one of their companions indicated that he had reached accord with the people inside, apparently another party of burglars. Lytle remained as lookout while the others entered and carried property out of the house. Lytle then went into the house and saw a body. One of the burglars who had been in the house, said, "Don't worry about it. We took care of him." Lytle and his companions then drove away. This is the essence of Lytle's eyewitness testimony.
>
> The state then introduced the text of a videotaped statement Lytle had given to the police, over appropriate objection. Lytle told the police that he heard conversation with "old people," and then "I hear, `no, no, no,' and then sounds of pain." The statement continued,
>
> > I ran back to see what was going on and Eddie [Bowman] was standing there over this man I saw one stab, I saw him do the last one. . . .
>
> He said that the person [Bowman] was standing over was wearing longjohns.
>
> Lytle at trial admitted having made these statements, but said that they were not true. He testified on cross-examination that each of the statements just quoted was a "lie." He also testified that Detective Glynn, the interrogating officer,

mistreated him and told him that [Bowman] had already made a statement implicating him.

The bodies of Earl and Pauline Chambers were found the next morning, dead of multiple stab wounds. Pauline was wearing longjohns. The medical examiner testified that Earl might have lived for as much as an hour, and Pauline for at least half an hour, after the wounding.

State v. Bowman, 741 S.W.2d 10, 11-12 (Mo. 1987) (en banc) (footnotes omitted). After the Missouri Supreme Court affirmed his conviction, see id. at 16, Bowman sought post-conviction relief pursuant to Missouri Supreme Court Rule 27.26.[2] The motion court denied his motion for post-conviction relief and the Missouri Court of Appeals affirmed the denial. Bowman v. State, 787 S.W.2d 822 (Mo. Ct. App. 1990). In October 1990, Bowman filed a habeas corpus petition, asserting four claims for relief. The district court issued an order denying Bowman relief, Bowman v. Armontrout, No. 90-0969, Opinion and Order Denying Petition for a Writ of Habeas Corpus, (June 29, 1992), and Bowman appealed. In February 1993, before filing an appellate brief, Bowman filed a motion to remand on the basis of newly discovered evidence. We granted the motion on March 5, 1993, and instructed the district court to conduct further proceedings on this issue. Without conducting an evidentiary hearing, the district court again denied relief, Bowman v. Armontrout, 859 F. Supp. 369 (W.D. Mo. 1994), and Bowman appeals.

## II.

In his motion for remand to the district court, Bowman alleged that "newly discovered evidence" made a remand necessary in order to fully develop the record. Our remand order states, in relevant part: "Appellant's motion for remand to the district court for

---

[2]Rule 27.26 was repealed January 1, 1988, and was replaced by Rule 27.15.

evidentiary hearing on newly discovered evidence is granted.  The case is remanded to the district court with directions to conduct further proceedings on the issue of newly discovered evidence."  As a threshold matter, Bowman claims that the district court erred in failing to follow our order.

The district court, in interpreting our remand order, allowed substantial briefing on the issue and held a status conference.  It did not, however, hold an evidentiary hearing.  The district court believed our directive required it to "consider whether claims of newly discovered evidence may be brought and if so, to take evidence on those claims.  There is no indication from the Eighth Circuit that these claims of newly discovered evidence should be treated any differently than other such claims similarly situated."  Bowman, 859 F. Supp. at 371.

Claims of newly discovered evidence that relate only to the guilt or innocence of a state prisoner do not warrant federal habeas corpus relief. Herrera v. Collins, 506 U.S. 390, 400 (1993) (citing Townsend v. Sain, 372 U.S. 293, 317 (1963)).  To constitute a basis for relief, such claims must establish an independent constitutional violation.  Herrera, 506 U.S. at 400.  "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution - not to correct errors of fact."  Id.

Before a petitioner is entitled to an evidentiary hearing in federal court, he must "`allege[] facts which, if proved, would entitle him to relief[.]'"  Church v. Sullivan, 942 F.2d 1501, 1510 (10th Cir. 1991) (alteration in original) (quoting Townsend, 372 U.S. at 312); see also Ruiz v. Norris, 71 F.3d 1404, 1406 (8th Cir. 1995).  Based on its thorough opinion, it is apparent that the district court carefully considered Bowman's claims.  In light of the record, we hold that the district court did not abuse its discretion in concluding that no evidentiary hearing was necessary.

See Ruiz, 71 F.3d at 1406 (standard of review). We agree that none of Bowman's "newly discovered" evidence claims, even if further developed in an evidentiary hearing, would have entitled him to relief for the reasons discussed below.

## III.

Bowman raises numerous claims in this appeal, some of which he alleges are newly discovered and others which appear to emanate from his initial petition. The essence of Bowman's claims are as follows: (1) the prosecution made a secret deal with Anthony Lytle, a testifying co-defendant; (2) the autopsy report of Pauline Chambers was falsified; (3) trial counsel was ineffective in failing to protect his speedy trial rights; and (4) Missouri Revised Statute § 491.074[3] was applied against him ex post facto.

### A. Evidence of Secret Deal

Bowman first alleges that the prosecution made a secret deal with Lytle for his testimony, that the deal was not disclosed, and that the prosecution elicited false testimony from Lytle about the deal, thus violating Bowman's due process rights. At Bowman's trial, both the prosecutor and Lytle denied having any type of deal. However, at Lytle's 29.15 hearing for post-conviction relief held in January 1990, the state did not oppose Lytle's motion to vacate his sentence based upon a prior agreement. At that hearing, the assistant prosecutor explained:

---

[3]The statute reads as follows:

> Notwithstanding any other provisions of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of an offense under chapter 565, 566 or 568, RSMo, shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement.

-5-

[Anthony Lytle] did not cooperate with us in the sense of doing anything unusual. In fact he was arguing against our case, but we believe he knew that by arguing against our case, it allowed us to put the video [of his confession] on, which resulted in the conviction of the three other, we believe, more culpable people . . .

Numerous times people from our office would go down to the pen to visit with him. . . . What we did tell him is that at the first available opportunity we would not oppose an early release, and at the time our thought was if he came up for parole, we certainly wouldn't stand in the way of parole . . . .

In addition, just prior to the start of Bowman's trial, the prosecutor stated:

Anthony Lytle sent a letter to his attorney and to me stating that he wanted to come back to court and also filed a motion with Judge Lombardo in which he wanted to come back as a witness for the Court in these cases. At that time, officers of the Kansas City, Missouri Police Department were sent to the Jefferson City Penitentiary, talked to Mr. Lytle, and he agreed to testify against Mr. Bowman. He never made that agreement before.

Based on these events, the district court found that, at some point, the prosecution made a "deal" with Lytle not to oppose early parole. The court also concluded that this did amount to new evidence because it was not available at the time Bowman presented his claims to the state court. Although the court found it was unclear whether the "deal" was made before or after Lytle testified, it held that, even assuming the existence of the deal before Lytle testified, Bowman's due process rights were not violated. Under United States v. Agurs, 427 U.S. 97, 103 (1976), due process is violated if the prosecution fails to disclose any agreement with a witness or fails to correct any false statement by a witness, and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." We agree with the district court that "[b]ecause of the peculiar nature of Mr. Lytle's testimony and the way in which the jury must have

considered it, . . . the additional evidence could not have affected the judgment of the jury." Bowman, 859 F. Supp. at 377.

Normally, evidence that a witness had a deal with the prosecution would cause the jury to question the credibility of the witness. However, evidence of a deal would only have affected the credibility of Lytle's live testimony - not his prior confession. In light of the fact that Lytle's live testimony favored Bowman, evidence of a deal was more likely to have undermined the live testimony rather than to have strengthened it. We find it difficult to fathom a situation where the jury would give more credence to a testifying witness who had a deal with the prosecution. In any event, the jury chose to believe Lytle's prior confession and disbelieve his live testimony. It is unlikely that evidence of a deal would have changed the jury's evaluation.

In addition, we find persuasive the fact that during Lytle's cross-examination, he acknowledged that he was hoping to receive favorable treatment from the state in exchange for his cooperation. In effect, he admitted to everything but a deal.[4] Because the

_____

[4]The following exchange occurred during Lytle's cross-examination:

Q. And isn't it true that [your attorney] was hired for the very specific purpose of trying to make a deal with [the prosecutor] in return for your testimony here today?

A. Something to that extent.

Q. That's the only reason he's representing you is to try to get you a deal with [the prosecutor], trying to get you a lighter sentence; is that right?

A. Something to that extent, yes, sir.

Q. And you know [your attorney] has spoken with [the prosecutor] an awful lot about you testifying in this case, hasn't he?

A. Yes, he has.

. . .

Q.  It's true Mr. Lytle, that you're not getting anything out of this testimony, is that right?

A.  That's right.

Q.  And you say the only reason you're here today is because you want to be; isn't that right?

A.  That's right.

Q.  But isn't it true, Mr. Lytle, that you're really hoping that you win that appeal and after you win that appeal if you cooperated with [the prosecutor] he is going to not prosecute you for murder anymore?

A.  I anticipate something.  I don't know--

Q.  You're going to get something out of this, aren't you?

A.  Hoping for something.

Q.  You're hoping that all that money spent on [your attorney] doesn't go to waste, isn't that right?

A.  Yes, I am.

Q.  And [your attorney] knows that no deal has been made for your testimony, right?

A.  As far as to my knowledge, yes.

Q.  And you know that you couldn't be forced to testify here if you didn't want to, don't you?

A.  Right.

Q.  But even knowing all that, your lawyer has told you that it's okay for you to go ahead and testify; isn't that right?

A.  Right.

Q.  And that's because you know that if you don't testify you can't even hope to get a deal out of [the prosecutor] later; isn't that right?

A.  Yes.

newly discovered evidence of a deal between Lytle and the prosecution would not likely have affected the jury's verdict, the district court correctly denied this claim.[5]

## B. Falsification of Autopsy

Bowman next asserts that his due process rights were violated because the prosecution suppressed, destroyed, and falsified evidence pertaining to the Pauline Chambers' autopsy. The crux of Bowman's claim is that the autopsy report is inconsistent with the description of the stabbing given by Lytle in his confession. The district court found that all of the evidence that Bowman referred to was available to him at the time of trial. Bowman, 859 F. Supp. at 379 ("The only thing `new' at this time is that petitioner's counsel has read the testimony in a new light, with a medical dictionary at his side."). We agree.

A petitioner's failure to develop a material fact in state court proceedings will be excused if he can show cause for and prejudice from his failure to raise the claim. See Keeney v. Tamayo-Reyes, 501 U.S. 1, 11 (1992). "`[C]ause . . . ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.'" Cornell v. Nix, 976 F.2d 376, 380 (8th Cir. 1992) (en banc) (quoting McCleskey v. Zant, 111 S. Ct. 1454, 1472 (1991), cert. denied, 507 U.S. 1020 (1993)). Also relevant is whether the newly discovered evidence "could have

---

Q. And that's why you're here, isn't it?

A. I'm here because I want to be here.

Q. You're here because you have to be here because if you don't testify [the prosecutor] isn't going to help you, isn't [sic] he?

A. I don't think so. I don't think he would, no, sir.

[5]It is axiomatic that no evidentiary hearing is warranted on this issue, for there is nothing further that could be developed on the existence of a deal.

been discovered earlier in the exercise of due diligence." Cornell, 976 F.2d at 380 (citing United States v. Bednar, 776 F.2d 236, 238 (8th Cir. 1985)).

We find that the factual basis of Bowman's claim concerning the autopsy evidence was reasonably available to him at the time of his trial. Thus, Bowman should have presented this claim to the state court. Because he has failed to demonstrate cause for his failure to do so, we need not discuss whether he was prejudiced by the default. Accordingly, the district court was correct in denying this claim.

## C. Ineffective Assistance

Bowman next claims that his trial attorney was ineffective for failing to protect his speedy trial rights. The district court had previously rejected this claim in Bowman's initial habeas petition. It declined to address this issue on remand because Bowman did not show any "newly discovered evidence" relating to his claim. A district court may decline to address a successive claim decided adversely against a petitioner in an earlier petition. Ruiz, 71 F.3d at 1409. "The motion to remand is the functional equivalent of a second or successive petition for habeas corpus." Smith v. Armontrout, 888 F.2d 530, 540 (8th Cir. 1989). Because Bowman raised this claim in his first petition, however, and because we have not previously addressed it, we believe it warrants discussion in this appeal.

Bowman first raised an ineffective assistance claim in his Rule 27.26 motion for post-conviction relief. After holding an evidentiary hearing, the motion court denied relief and the Missouri Court of Appeals affirmed. To prevail on this claim, Bowman must establish that his attorney's conduct was professionally unreasonable and that, but for his attorney's performance, the outcome of the proceeding would have likely been

different.  <u>Griffin v. Delo</u>, 33 F.3d 895, 900 (8th Cir. 1994) (citing <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984)).  Bowman bears the burden in showing that his attorney's conduct "fell below an objective standard of reasonableness."  <u>See</u> <u>Griffin</u>, 33 F.3d at 900 (citing <u>Wing v. Sargent</u>, 940 F.2d 1189, 1191 (8th Cir. 1991)).  He must also prove that he was prejudiced by his attorney's performance.  <u>Griffin</u>, 33 F.3d at 900 (citing <u>Lawrence v. Armontrout</u>, 961 F.2d 113, 115 (8th Cir. 1992)).

In Bowman's post-conviction proceeding, the Missouri Court of Appeals rejected his ineffective assistance claim regarding the Speedy Trial Act issue for the following reasons:

> [P]rior to the start of the trial, [counsel] did make a motion for dismissal of the case on the ground that appellant had been denied his right to a speedy trial.  [Further], according to [counsel's] testimony at the Rule 27.26 hearing, it was to [petitioner's] advantage to delay the start of the trial, as [counsel] was using the time to try to arrange a favorable deal with the prosecutor.  Thus, [counsel's] requests for continuances were a reasonable trial strategy . . . .

Under <u>Strickland</u>, there is a strong presumption that an attorney's performance is professionally reasonable.  466 U.S. at 689.  Moreover, <u>Strickland</u> holds that decisions related to trial strategy are virtually unchallengeable.  <u>Id.</u> at 690.  The record establishes that counsel for Bowman recognized the Speedy Trial Act issue and made tactical trial decisions in the interests of his client.  Because counsel's trial strategy decisions were objectively reasonable, Bowman's ineffective assistance claim is without merit.

## D.  Ex Post Facto Claim

Bowman also alleges that the application of section 491.074 against him constituted an ex post facto violation.  Bowman raised

this claim in his initial habeas petition.  The district court denied the claim, finding that it was procedurally defaulted.  On appeal, Bowman does not allege any newly discovered evidence relating to this claim.

Instead of raising the ex post facto claim in his direct appeal, Bowman challenged the constitutionality of section 491.074 on Confrontation Clause grounds.  See Bowman, 741 S.W.2d at 12-13.  His failure to properly present this claim in state court constitutes a procedural default.  Because the claim has been procedurally defaulted, Bowman must establish cause for the default and show that he was prejudiced by the alleged violation of his constitutional rights.  See Heffernan v. Norris, 48 F.3d 331, 333 (8th Cir. 1995).  Bowman has failed to advance any cause in this appeal for his procedural default.  Thus, we need not examine whether he was prejudiced.  Because this claim has been procedurally defaulted, we decline to address it.

## E.  Actual Innocence

Despite Bowman's failure to show cause for his default, we can reach the merits of his claims if he can show that he is probably actually innocent.  Wyldes v. Hundley, 69 F.3d 247, 254 (8th Cir. 1995), cert. denied, 116 S. Ct. 1578 (1996).  Under Schlup v. Delo, 115 S. Ct. 851 (1995), a petitioner who raises a gateway claim of actual innocence must satisfy a two-part test.  First, the petitioner's allegations of constitutional error must be supported "with new reliable evidence . . . that was not presented at trial."  Id. at 865.  Second, the petitioner must establish "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Id. at 867.  See also Wyldes, 69 F.3d at 254.  The actual innocence exception requires "review of procedurally barred, abusive, or successive claims only in the narrowest type of case--when a fundamental miscarriage of justice would otherwise result."  Ruiz, 71 F.3d at 1409 (citing Schlup, 115

S. Ct. at 864).

The district court found no merit in Bowman's actual innocence claim. At trial, Bowman defended on the ground that although he participated in the burglary at the Chambers' home, he was not involved at the time of the murders. Under Missouri law, Bowman's conviction for felony murder will stand if he participated in the burglary when the murders occurred. See Mo. Rev. Stat. § 565.021 (a person commits second-degree murder if he "commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony . . . another person is killed as a result . . ."). As the district court found, "Even if petitioner did not wield the murder weapon, as he argues the evidence shows, that does not prove that he is `actually innocent' of the more broad reaching crime of felony murder." Bowman, 859 F. Supp. at 372, n.3.

The state put on ample evidence of Bowman's participation in the burglary. It is true that Lytle's confession was the only evidence that directly placed Bowman at the scene at the time of the murders. The jury chose to believe Lytle's confession and disbelieve his live testimony, despite evidence that tended to discredit the confession. In any event, the jury could reasonably have inferred that the murders occurred during the course of the burglary regardless of the confession evidence. Even Lytle's live testimony did not conclusively show that Bowman was not present at the time of the murders. Thus, we agree with the district court that Bowman has not established a claim of actual innocence.

## IV.

We have considered the remainder of Bowman's claims and find them to be without merit. The judgment dismissing the petition for writ of habeas corpus is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.