[This opinion has been published in *Ohio Official Reports* at 175 Ohio St.3d 1231.]

IN RE DISQUALIFICATION OF PARK.

IN RE ESTATE OF LOUIS W. SHURMAN

IN RE ESTATE OF IRENE R. SHURMAN

IN RE ESTATE OF GERALD L. SHURMAN

AND

IN RE ESTATE OF DARLENE M. SHURMAN.

[Cite as *In re Disqualification of Park*, 2024-Ohio-3184.]

*Judges—Affidavits of disqualification—R.C. 2101.39—R.C. 2701.03—Affiant failed to demonstrate that probate-court judge is disqualified for allegedly engaging in improper ex parte communications and making false statements—Disqualification denied.*

(No. 24-AP-067—Decided July 2, 2024.)

ON AFFIDAVIT OF DISQUALIFICATION in Stark County Court of Common Pleas, Probate Division, Case Nos. 241722, 244969, 244970, and 244971.

_____

**KENNEDY, C.J.**

{¶ 1} Gerald B. Golub, the former attorney for the fiduciary and the fiduciary's spouse in the four underlying estate cases, has filed an affidavit of disqualification pursuant to R.C. 2101.39 and 2701.03 seeking to disqualify Judge Dixie Park of the Stark County Court of Common Pleas, Probate Division, from presiding over the cases. Judge Park filed a response to the affidavit of disqualification.

{¶ 2} This matter presents two threshold issues. The first is whether Golub, as the former attorney for the fiduciary and the fiduciary's spouse in the underlying cases, has standing to seek Judge Park's disqualification. R.C. 2101.39 permits "any party to the proceeding or the party's counsel" to file an affidavit of

disqualification against a probate judge. As explained below, because the probate court recently issued a citation against Golub and he was under an order of the probate court when he filed the affidavit of disqualification, he is considered a party to the citation-related proceedings in the underlying cases for purposes of filing an affidavit of disqualification. Therefore, Golub has standing to seek the judge's disqualification from presiding over any further proceedings in the underlying cases relating to the citation.

{¶ 3} The second threshold issue is whether Golub has established that it was impossible for him to comply with the statutory deadline for filing an affidavit of disqualification. R.C. 2701.03(B) provides that an affidavit of disqualification "shall be filed with the clerk of the supreme court not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled," although the requirement is subject to an impossibility exception established by caselaw. Golub attempted to file two affidavits of disqualification on the seventh day before the next scheduled hearing in the underlying cases, but the clerk of this court refused to accept the affidavits for filing. Golub argues that the clerk erred in rejecting those affidavits of disqualification, which made it impossible for him to comply with the statutory filing deadline. As explained below, the clerk should have accepted Golub's initial affidavit of disqualification presented on the seventh day before the next hearing in the underlying cases. Therefore, Golub has established that it was impossible for him to comply with the seven-day filing deadline, and the affidavit of disqualification that was filed on May 17, 2024, is considered timely filed.

{¶ 4} Turning to the merits of the affidavit of disqualification, Golub has not established that Judge Park should be disqualified from the citation-related proceedings in the underlying cases. Therefore, the affidavit of disqualification is denied. The cases shall proceed before Judge Park.

**Probate-Court Proceedings**

**{¶ 5}** Golub previously represented the fiduciary and the fiduciary's spouse in the four underlying related estate cases. On June 30, 2023, Golub withdrew as counsel. On July 18, attorney Laura Mills filed a notice of substitution of counsel in each of the estate cases. On December 6, the probate court ordered that final accounts be filed by March 6, 2024, in all four cases.

**{¶ 6}** On March 6, Mills filed a motion for a status conference.

**{¶ 7}** On April 2, the probate court held the status conference, during which Judge Park was informed that Golub had taken attorney fees from the estates without court approval. On April 5, the judge issued a citation ordering Golub to appear on April 23 for a hearing. Golub moved to rescind the citation and requested a continuance of the citation hearing. Judge Park denied the motion to rescind but continued the hearing until May 13.

**{¶ 8}** During the May 13 citation hearing, Golub acknowledged that although the probate court had not approved attorney fees, he was paid $43,560 in attorney fees for his work in the underlying cases. Judge Park repeatedly informed Golub that he was not authorized to accept attorney fees without court approval. Golub argued that the court had not properly notified him of the subject matter of the citation hearing. At the end of the hearing, the following exchange occurred:

> Attorney Golub: What I am asking here is that Laura Mills filed a motion for a status conference. I have been asking around why, why, what today's hearing was about. I was never given any notice whatsoever. Laura Mills filed a motion for status conference on March 6th. She did not give a copy of that or proof of service to me.
>
> [Judge Park]: That doesn't change the fact that you took attorney fees without the court's approval.

Attorney Golub: But I am still supposed to, if it involves me and involves me coming here today, I should [have] at least had some notice as to what it was about today. That is all I am saying.

[Judge Park]: Well shouldn't the court have had notice that you were taking attorney fees? You know, Mr. Golub you need to pay those fees back, they were taken without[—]

Attorney Golub: That's fine. That's fine.

. . .

[Judge Park]: [—]Court approval. We are adjourned at this time.

{¶ 9} On May 15, Judge Park issued an entry summarizing the May 13 citation hearing. The entry noted:

Attorney Golub stated that he has taken $43,560 in attorney fees with the consent of Fiduciary. . . . When the Court admonished Attorney Golub for taking attorney fees from the estate without prior approval, he stated that he would return the attorney fees taken.

*In re Estate of Shurman*, Stark C.P. No. 241722, 3 (May 15, 2024). The judge also ordered that Golub return all attorney fees to Mills within seven days of the entry and scheduled a status conference for May 23 "to confirm compliance with [that] order." *Id.* at 5.

{¶ 10} On May 16—one day after the judge issued the entry and seven days before the scheduled May 23 status conference—Golub attempted to file two affidavits of disqualification against Judge Park.

{¶ 11} The first affidavit of disqualification was rejected by the clerk of the Supreme Court of Ohio. The clerk sent an email to Golub explaining that the first

4

affidavit was rejected on the basis that it "was not properly notarized with a notary public's jurat." Later that day, Golub attempted to file a second affidavit of disqualification, but the clerk rejected it the next day. The clerk sent an email to Golub indicating that the second affidavit could not be filed because the notary language did not indicate that the affidavit had been signed in the presence of a notary. On May 17, Golub presented a third affidavit of disqualification, which the clerk accepted for filing.

{¶ 12} As stated above, Golub's affidavit of disqualification presents two threshold issues: first, whether Golub, as the former attorney for the fiduciary and the fiduciary's spouse in the four underlying estate cases, has standing to file an affidavit of disqualification against Judge Park and, second, whether Golub has met the impossibility exception to the seven-day deadline for filing an affidavit of disqualification.

### Standing to File an Affidavit of Disqualification

{¶ 13} Standing to file an affidavit of disqualification is conferred by statute. *In re Disqualification of Gallagher*, 2023-Ohio-2977, ¶ 26. R.C. 2101.39 provides that "[i]f a probate judge allegedly has a bias or prejudice for or against a party or a party's counsel in a proceeding pending before the judge, allegedly otherwise is interested in a proceeding pending before the judge, or allegedly is disqualified to preside in the proceeding . . . , *any party to the proceeding or the party's counsel may file an affidavit of disqualification* with the clerk of the supreme court." (Emphasis added.)

{¶ 14} Under this plain and unambiguous language, only a "party to the proceeding or the party's counsel" may file an affidavit of disqualification against a probate judge. "Former chief justices have 'strictly enforced' this statutory language and have consistently found that 'individuals who do not qualify as a "party" or "party's counsel" do not have standing to file an affidavit of disqualification.'" *Gallagher* at ¶ 26, quoting *In re Disqualification of Grendell*,

2013-Ohio-5243, ¶ 2, citing *In re Disqualification of Cleary*, 74 Ohio St.3d 1225 (1990), and *In re Disqualification of Haas*, 74 Ohio St.3d 1217 (1990).

{¶ 15} A "'party' is defined as '[o]ne by or against whom a lawsuit is brought; anyone who both is directly interested in a lawsuit and has a right to control the proceedings, make a defense, or appeal from an adverse judgment.'" (Bracketed text in original.) *In re Disqualification of Berhalter*, 2023-Ohio-4881, ¶ 21, quoting *Black's Law Dictionary* (11th Ed. 2019). A "party's counsel" means counsel of record in the underlying case from which the judge's disqualification is sought *or* an attorney retained by a party in the underlying case to file an affidavit of disqualification in this court. *See Gallagher* at ¶ 29-30.

{¶ 16} Judge Park argues that Golub lacked standing to file the affidavit of disqualification because he is not a party to the underlying estate cases and no longer serves as counsel for the fiduciary or the fiduciary's spouse. While it is true that Golub is not a fiduciary or a beneficiary in the estate cases and he does not currently serve as an attorney for any of those persons or the estates, Golub has an interest in the ongoing citation-related proceedings. In the probate court's April 5 citation, the judge ordered Golub to appear for a hearing and cited R.C. 2101.23, which authorizes a probate judge to punish any contempt of the judge's authority. In the court's May 15 entry, the judge expressly ordered Golub to return all attorney fees to Mills and scheduled a status conference for May 23 "to confirm compliance with [that] order." *Shurman*, Stark C.P. No. 241722, at 5.

{¶ 17} When Golub filed the affidavit of disqualification on May 17, he was under an order from the probate court to return attorney fees and a hearing was scheduled to ensure compliance with that order. Under these unique circumstances, Golub is considered a party to the citation-related proceedings in the underlying cases for the purpose of filing an affidavit of disqualification under R.C. 2101.39.

{¶ 18} Therefore, applying the plain meaning of the word "party" as used in R.C. 2101.39, Golub has standing to seek Judge Park's disqualification from the citation-related proceedings in the underlying cases.

**The Impossibility Exception to the Seven-Day Filing Deadline**

{¶ 19} R.C. 2701.03(B) provides that an affidavit of disqualification "shall be filed with the clerk of the supreme court not less than seven calendar days before the day on which the next hearing in the proceeding is scheduled." The affidavit of disqualification also must meet other statutory requirements; for example, the affidavit must include "[t]he jurat of a notary public or another person authorized to administer oaths or affirmations," R.C. 2701.03(B)(2). If an affidavit of disqualification "is not timely presented for filing" or does not satisfy the other statutory filing requirements, R.C. 2701.03(C)(2) prohibits the clerk of this court from accepting it for filing.

{¶ 20} With respect to the seven-day filing deadline, a body of precedent has created an exception to the requirement based on impossibility. Specifically, in 1999, former Chief Justice Thomas J. Moyer recognized that "[t]he statutory provision that requires an affidavit to be filed on a timely basis will be set aside only when compliance with the provision is impossible." *In re Disqualification of Leskovyansky*, 1999-Ohio-6, ¶ 2. Since then, chief justices have primarily limited application of the impossibility exception to "cases in which the events giving rise to the affidavit of disqualification occurred within seven days of the next hearing, the judge was assigned to the underlying case within seven days of the next hearing, the judge scheduled the next hearing to occur within seven days, or the affiant had no seven-day window without a hearing in which to file an affidavit of disqualification." *In re Disqualification of Schroeder*, 2023-Ohio-2166, ¶ 16.

{¶ 21} Here, the events giving rise to the affidavit of disqualification occurred—at least in part—on May 15, the day Judge Park's entry was filed. Golub attempted to file two affidavits of disqualification the following day on May 16,

which would have been seven days before the next scheduled hearing in the underlying cases. However, the clerk of this court refused to file the affidavits of disqualification on the basis that Golub had not included a proper jurat with them. The jurat certificates included with Golub's affidavits of disqualification indicated that he had affirmed the statements in the affidavits before a notary public, but the certificates did not indicate that he had subscribed the affidavits in the presence of the notary public. The clerk advised Golub that the jurat-certificate language was required to indicate that the signer had sworn or affirmed *and* subscribed or signed the affidavit in the presence of a notary public.

{¶ 22} On May 17—six days before the next scheduled hearing—Golub presented another affidavit of disqualification for filing. The jurat certificate in the May 17 affidavit included language confirming that Golub had affirmed *and* subscribed the affidavit before a notary public. Golub also averred that it was impossible for him to comply with the seven-day filing deadline because the clerk had misinterpreted the jurat requirement and incorrectly refused to file the affidavits of disqualification that Golub had presented on May 16.

{¶ 23} Under these facts, whether the impossibility exception applies turns on whether the clerk of this court properly applied R.C. 2701.03(B)(2)'s jurat requirement. Specifically, the issue is whether an affidavit of disqualification must include a jurat indicating that the affiant both (1) swore or affirmed the statements in the affidavit *and* (2) subscribed or signed the affidavit in the presence of a notary public or other person authorized to administer oaths or affirmations.

{¶ 24} R.C. Ch. 147 describes a "jurat" in two ways. First, R.C. 147.011(C) defines a "jurat" as

a *notarial act* in which both of the following are met:

> (1) The signer of the notarized document is required to give an oath or affirmation that the statement in the notarized document is true and correct; [and]
>
> (2) The signer signs the notarized document in the presence of a notary public.

(Emphasis added.)

{¶ 25} Second, R.C. 147.542(A) describes the type of *notarial certificate* that a notary public is required to provide for every notarial act that the notary performs. And R.C. 147.542(C) provides that a "jurat certificate shall state that an oath or affirmation was administered to the signer with regard to the notarial act." R.C. 147.542 does not expressly require that the jurat certificate also include language confirming that the signer subscribed or signed the affidavit before a notary.

{¶ 26} The use of "jurat" in the affidavit-of-disqualification statute, R.C. 2701.03(B)(2), refers to the jurat certificate—not the notarial act of administering a jurat. A jurat "proves that the signer of the affidavit swore his statement under oath and . . . 'is prima facie evidence of the fact that the affidavit was properly made before such notary.'" *In re Disqualification of Cook*, 2023-Ohio-4883, ¶ 8, quoting *Stern v. Cuyahoga Cty. Bd. of Elections*, 14 Ohio St.2d 175, 181 (1968).

{¶ 27} Because the term "jurat" in R.C. 2701.03(B)(2) refers to the jurat certificate, the clerk of this court should not have refused to file Golub's May 16 affidavits of disqualification on the basis that the jurat did not include language indicating that Golub had subscribed the affidavits in the presence of a notary. Again, R.C. 147.542(C) requires only that a jurat certificate confirm "that an oath or affirmation was administered to the signer with regard to the notarial act." When giving effect to words used in a statute, courts must refrain from inserting or deleting words. *See In re Disqualification of Celebrezze*, 2023-Ohio-4383, ¶ 82.

As the late Justice Antonin Scalia and Bryan A. Garner put it, "Nothing is to be added to what the text states or reasonably implies . . . . That is, a matter not covered is to be treated as not covered." (Boldface omitted.) Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012). And "'[t]o supply omissions transcends the judicial function.'" *Id.* at 94, quoting *Iselin v. United States*, 270 U.S. 245, 251 (1926).

**{¶ 28}** In sum, the notarial act of a jurat requires the signer of the notarized document (1) "to give an oath or affirmation that the statement in the notarized document is true and correct" *and* (2) to "sign[] the notarized document in the presence of a notary public." R.C. 147.011(C); *see also Cook* at ¶ 9. However, there is no statutory requirement that the *jurat certificate* included with an affidavit of disqualification indicate that the affidavit was subscribed before a notary public. The clerk of this court should have accepted for filing the first affidavit of disqualification that Golub presented on May 16. The clerk's refusal to file the initial May 16 affidavit of disqualification rendered it impossible for Golub to comply with the seven-day filing deadline under R.C. 2701.03(B). Therefore, the affidavit of disqualification that was filed on May 17 will be considered timely filed.

**{¶ 29}** This decision will now turn to the merits of Golub's request to disqualify Judge Park from the citation-related proceedings.

### Affidavit-of-Disqualification Proceedings

**{¶ 30}** R.C. 2101.39 provides that if a probate judge "allegedly has a bias or prejudice for or against a party or a party's counsel in a proceeding pending before the judge, allegedly otherwise is interested in a proceeding pending before the judge, or allegedly is disqualified to preside in the proceeding," then that party or the party's counsel may file an affidavit of disqualification with the clerk of this court.

{¶ 31} Golub alleges that Judge Park should be disqualified for engaging in two improper ex parte communications and for making false statements in the May 15 entry. The judge denies engaging in any improper ex parte communications, denies making any false statements, and denies that there are any grounds for disqualification.

*Disqualification under R.C. 2101.39: Ex Parte Communications*

{¶ 32} In support of the allegation that Judge Park engaged in improper ex parte communications, Golub first states that while waiting in the courthouse immediately before the May 13 citation hearing, a bailiff summoned Mills into Judge Park's courtroom, but Golub was not permitted to enter until about five minutes later. Golub asks the chief justice to "seize the security footage" from the courthouse to prove this allegation.

{¶ 33} Golub next asserts that the May 15 entry proves that Judge Park engaged in another improper ex parte communication. In the entry, the judge stated that during the April 2 status conference, the judge was informed that Golub had taken fees from the estate without court approval. Because Golub was not notified of the status conference—and therefore did not attend—he asserts that the status conference itself constituted an improper ex parte communication.

{¶ 34} In response, Judge Park acknowledges that she briefly spoke with Mills immediately before the May 13 citation hearing. The judge avers that the communication was limited to the status of the estates' accountings and that they did not discuss Golub. The judge asserts that she summarized the communication with Mills in the May 15 entry when she wrote that Mills stated that additional information was needed from the fiduciary to complete an account for each estate. The judge also states that her brief discussion with Mills was not an improper ex parte communication, because the underlying estate cases are not adversarial, Golub is not a party to or counsel in the estate cases, and probate judges enjoy broad discretion in the manner in which they conduct proceedings.

{¶ 35} Judge Park similarly denies that the April 2 status conference may be characterized as improper ex parte communication. The judge notes that Mills requested the status conference as counsel for the estates and that because Golub no longer served as counsel for the estates, the court was under no obligation to notify him of the status conference.

*Disqualification under R.C. 2101.39: Making False Statements*

{¶ 36} In support of the allegation that Judge Park should be disqualified for making false statements, Golub points to the following language in the judge's May 15 entry: "When the Court admonished Attorney Golub for taking attorney fees from the estate without prior approval, he stated that he would return the attorney fees taken." *Shurman*, Stark C.P. No. 241722, at 3. Golub avers that he never testified during the citation hearing that he would return the attorney fees and that he had maintained that the fees he received were lawful and compliant with local court rules.

{¶ 37} In response, Judge Park submitted a transcript of the May 13 citation hearing and points to the end of the hearing when the judge said, "You know, Mr. Golub you need to pay those fees back," and Golub responded, "That's fine. That's fine." According to the judge, the statements in her May 15 entry were based on this exchange.

**Disqualification of a Probate-Court Judge**

{¶ 38} R.C. 2101.39 provides two specific grounds and a catchall provision for the disqualification of a probate-court judge. Granting or denying the affidavit of disqualification turns on whether the chief justice determines that the allegations of interest, bias, prejudice, or disqualification set forth in the affidavit exist. R.C. 2101.39 and 2701.03(E).

{¶ 39} The burden falls on the affiant to submit "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations." R.C. 2701.03(B)(1). Therefore, "[a]n

affidavit must describe with specificity and particularity those facts alleged to support the claim." *In re Disqualification of Mitrovich*, 2003-Ohio-7358, ¶ 4.

{¶ 40} Golub alleges one statutory basis for disqualification—that Judge Park is disqualified for engaging in improper ex parte communications and for making false statements.

{¶ 41} A probate-court judge "allegedly is disqualified" under R.C. 2101.39 when none of the express bases for disqualification—interest, bias, or prejudice—apply but other grounds for disqualification exist. *See In re Disqualification of Schooley*, 2023-Ohio-4332, ¶ 19. For example, the statute speaks in terms of *actual* bias and prejudice; "[n]evertheless, even in cases in which no evidence of actual bias or prejudice is apparent, a judge's disqualification may be appropriate to avoid an appearance of impropriety or when the public's confidence in the integrity of the judicial system is at issue," *In re Disqualification of Crawford*, 2017-Ohio-9428, ¶ 6. In addition, an ex parte communication between a judge and a party may be a ground for disqualification when "the communication either was initiated by the judge or addressed substantive matters in the pending case." *In re Disqualification of Calabrese*, 2002-Ohio-7475, ¶ 2. Jud.Cond.R. 2.11 sets forth additional circumstances when a judge must be disqualified, including when a family member of the judge has an economic interest in the subject matter in controversy and when the judge is likely to be a material witness in the proceeding.

{¶ 42} These examples are not exhaustive, but they illustrate that a judge may still be disqualified when the express grounds for disqualification specified in R.C. 2101.39 are not applicable.

## Analysis

{¶ 43} For the reasons explained below, Golub has not established that Judge Park's disqualification is warranted.

{¶ 44} As an initial matter, Golub asks the chief justice to seize the probate court's video footage from May 13, and he avers that an audio recording of the May

citation hearing would substantiate his allegations. Golub failed, however, to submit an audio recording with the affidavit of disqualification. The *affiant* has the burden "to not only identify specific allegations of bias but to ensure the 'allegations [can] be verified by the record.'" *In re Disqualification of Schroeder*, 2023-Ohio-3171, ¶ 49, quoting *In re Disqualification of Sheward*, 2013-Ohio-4244, ¶ 6. "[I]t is not the chief justice's duty in deciding an affidavit of disqualification to . . . obtain evidence on the affiant's behalf." *In re Disqualification of Knece*, 2014-Ohio-1414, ¶ 11. The affidavit of disqualification will be decided based on the record in this affidavit-of-disqualification case. The chief justice does not further investigate an affiant's claims.

*Disqualification under R.C. 2101.39: Ex Parte Communications*

{¶ 45} Ex parte communication means "a communication, concerning a pending or impending matter, between counsel or an unrepresented party and the court when opposing counsel or an unrepresented party is not present or any other communication made to the judge outside the presence of the parties or their lawyers." Jud.Cond.R. Terminology. However, "[i]n affidavit of disqualification proceedings, the question regarding alleged ex parte communications is not whether the communication violates the Code of Judicial Conduct but whether the communications demonstrate bias or prejudice on the part of the judge," *In re Disqualification of Saffold*, 2001-Ohio-4103, ¶ 4, or otherwise supports disqualifying the judge, *see, e.g.*, *In re Disqualification of Gall*, 2016-Ohio-8602, ¶ 5 (stating that "the issue . . . is not whether the communication qualified as 'ex parte' under the Code of Judicial Conduct but whether the communication created an appearance of impropriety"). Moreover, an allegation that a judge engaged in an improper ex parte communication "must be substantiated and consist of something more than hearsay or speculation." *In re Disqualification of Forsthoefel*, 2013-Ohio-2292, ¶ 7.

{¶ 46} Golub has not established that Judge Park had an improper communication with Mills on May 13. The judge acknowledges that she and Mills briefly discussed the status of the *estate accountings* and that Mills identified additional information that she needed from the fiduciary to complete the accounts. The judge avers that they did not discuss Golub, who is neither a party to nor counsel in the estate cases. Beyond Golub's speculation, there is no evidence that Judge Park and Mills discussed any substantive matter relating to the citation issued against Golub. Golub has failed to establish that the judge's communication with Mills warrants disqualification from the citation-related proceedings.

{¶ 47} Similarly, the April 2 status conference does not constitute improper ex parte communication. Golub had withdrawn as counsel in each estate case over nine months before the status conference, and Judge Park was under no obligation to notify Golub of the status conference or include him in it. The fact that Mills or the fiduciary informed the judge during the status conference that Golub had taken attorney fees from the estates without court approval does not somehow convert the status conference into an improper ex parte communication warranting the judge's disqualification. At that time, the judge had not issued the citation, Golub was not a party to the proceedings, and the judge was not required to include Golub in the discussions that occurred during the status conference.

{¶ 48} Therefore, this allegation lacks merit.

*Disqualification under R.C. 2101.39: False Statements*

{¶ 49} The transcript of the May 13 citation hearing indicates that in response to Judge Park's statement, "You know, Mr. Golub you need to pay those fees back," Golub responded, "That's fine. That's fine." Based on that exchange, the judge issued the May 15 entry indicating that Golub had agreed to return the attorney fees he received for his work in the underlying cases. Golub has failed to demonstrate how any of the language in the judge's entry constitutes a false statement or otherwise warrants the judge's disqualification.

**{¶ 50}** Therefore, this allegation also lacks merit.

## Conclusion

**{¶ 51}** The affidavit of disqualification is denied. The estate cases, including the citation-related proceedings, may proceed before Judge Park.

_____