**[This opinion has been published in *Ohio Official Reports* at 178 Ohio St.3d 1277.]**

IN RE DISQUALIFICATION OF REECE.

MEDICAL PROTECTIVE COMPANY, INC. *v*. DURRANI.

**[Cite as *In re Disqualification of Reece*, 2025-Ohio-1604.]**

*Judges—Affidavits of disqualification—R.C. 2701.03—Affidavit of nonparty stricken because someone who is not a party to underlying case, counsel for a party to the case, or the judge presiding over the case may not file his or her own affidavit in support of or in response to an affidavit of disqualification—Judge's comments and conduct in underlying case have not created appearance of bias against plaintiff—Disqualification denied.*

(No. 25-AP-014—Decided February 27, 2025.)

ON AFFIDAVIT OF DISQUALIFICATION in Hamilton County Court of Common Pleas, General Division, Case No. A2304696.

————————

**KENNEDY, C.J.**

{¶ 1} Richard D. Porotsky, attorney for the plaintiff in the underlying civil action, the Medical Protective Co., Inc. ("MedPro"), has filed an affidavit of disqualification pursuant to R.C. 2701.03 seeking to disqualify retired Judge Guy L. Reece II from presiding over the case. Judge Reece filed a response to the affidavit of disqualification, and former attorney Eric Deters filed an affidavit responding to the affidavit of disqualification.

{¶ 2} For the reasons set forth below, Deters's affidavit is stricken. And because Porotsky has failed to demonstrate that Judge Reece should be disqualified, the affidavit of disqualification is denied. The underlying case shall proceed before Judge Reece.

**Trial-Court Proceedings**

{¶ 3} MedPro filed an action seeking a declaratory judgment that medical-malpractice-insurance policies it had issued to Abubakar Atiq Durrani, M.D., and his practice, the Center for Advanced Spine Technologies, were void due to misrepresentations made in acquiring those policies.

{¶ 4} Over 400 cases ("the Durrani cases") have been filed by various plaintiffs alleging that Durrani fraudulently induced patients to undergo unnecessary surgeries and caused them significant injury. Many of those plaintiffs were initially represented by Deters, who was subsequently suspended from the practice of law in Ohio and then relinquished his law license. However, according to Porotsky, Deters has engaged in the unauthorized practice of law by continuing to provide legal and strategic advice to plaintiffs in the Durrani cases while acting as a consultant. Attorney David Drake has taken over the plaintiffs' representation in the Durrani cases, but because he is not licensed to practice law in this State, Ohio attorney Alan Statman supervises the Durrani cases.

{¶ 5} After being indicted for healthcare fraud in 2013, Durrani fled to Pakistan. Although MedPro has provided Durrani and his practice with a defense in the medical-claim actions, it alleges that the policies it had issued do not provide coverage for crimes, willful torts, punitive damages, or cases in which Durrani has not cooperated with the defense.

{¶ 6} Judge Reece was assigned to hear the Durrani cases as well as MedPro's declaratory-judgment action.

{¶ 7} Porotsky filed the affidavit of disqualification on January 31, 2025. Deters filed his own responsive affidavit on February 5, and Porotsky filed a supplemental affidavit of disqualification on February 12.

**Affidavit-of-Disqualification Proceedings**

{¶ 8} R.C. 2701.03(A) provides that if a judge of a court of common pleas "allegedly is interested in a proceeding pending before the court, allegedly is related

to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court," then that party or the party's counsel may file an affidavit of disqualification with the clerk of this court.

*Allegations against Judge Reece*

{¶ 9} Porotsky alleges that Judge Reece's words and conduct have created an appearance of bias against MedPro. Porotsky maintains that the judge has cast doubt on MedPro's claims and vigorously questioned him about MedPro's providing a defense to Durrani and his practice while also seeking to void the policies. For example, Porotsky notes that during one exchange at a hearing held on May 21, 2024, the judge asked him, "[W]ho is the Great Oz here?" (i.e., who is controlling the defense against the medical claims). Porotsky also asserts that Judge Reece has improperly granted a motion without allowing MedPro to respond to it while denying or not deciding MedPro's own motions. He says that Judge Reece also has tolerated Deters's public statements allegedly promoting violence against MedPro, its CEO, and its counsel and that the judge denied MedPro's request for a gag order without citing legal authority supporting the decision.

{¶ 10} Porotsky also claims that Judge Reece engaged in an ex parte communication with opposing counsel, Statman, after Porotsky moved to compel the production of emails involving Deters, who had been listed as a defense witness. After Porotsky filed the motion, Porotsky says, Statman sent him an email indicating that he had spoken to the judge and would be withdrawing Deters as a witness. Judge Reece then denied the motion to compel.

{¶ 11} Finally, Porotsky contends that Judge Reece has condoned Deters's participation in the case, even after Statman violated a protective order by giving Deters access to confidential information. Porotsky moved for sanctions, he says, since Statman had allowed access to the confidential material. He also asserts that the judge has not stopped Statman from making unprofessional comments in the

courtroom. And, Porotsky avers, Judge Reece failed to rule on a motion to strike an 84-page argumentative affidavit that Deters emailed to the judge.

{¶ 12} Judge Reece denies any bias on his part. Regarding the "Great Oz" remark and Porotsky's claim that the judge has prejudged the underlying case, Judge Reece says that asking tough questions does not demonstrate bias and that the transcript of the May 21 hearing shows that he said he would not make any decisions that day. Judge Reece admits that he may have erred in ruling on the plaintiffs' motion to supplement in the Durrani cases, and he says that because of a clerical error, his order vacating that decision was not filed. Although he says he may have erred in ruling on some of MedPro's motions, the judge argues that any possible error is not grounds for disqualification and that he intends to have the case ready for motions for summary judgment in a timely manner.

{¶ 13} Judge Reece contends that the decision whether to enter a gag order to prevent Deters from engaging in violent rhetoric or to enforce an existing gag order is committed to his discretion and that his denial of MedPro's motion for such an order is not an abuse of discretion. He also maintains that Porotsky has not shown that Deters has engaged in additional conduct that the judge previously found "highly inappropriate" and that would have required the judge to take action. Judge Reece adds that he "rejected" the affidavit Deters emailed him and that he did not read it.

{¶ 14} Regarding Statman's allegedly unprofessional comments, Judge Reece suggests that Porotsky engaged in similar conduct, and the judge notes that he admonished both counsel during a January 24, 2025 hearing. Lastly, the judge denies that he engaged in an ex parte communication.

{¶ 15} Before addressing the merits of Porotsky's allegation of the appearance of bias, there are two preliminary matters: first, whether a person who is not a party to the underlying case, counsel for a party to the case, or the judge presiding over the case may file his or her own affidavit in an affidavit-of-

4

disqualification proceeding, and second, whether Porotsky forfeited one of his arguments by his delay in filing the affidavit of disqualification.

*Deters's Affidavit*

**{¶ 16}** As noted above, Deters filed his own affidavit to respond to "attacks made by Rick Porotsky against [him]." However, this is not the forum for Deters to respond to Porotsky's claims. R.C. 2701.03 provides for the filing of an affidavit of disqualification by a party or a party's counsel, and S.Ct.Prac.R. 21.02(A)(2) states that the chief justice may request a response from the judge whose disqualification is requested. However, nothing in the statute or our Rules of Practice permit someone who is not a party to the underlying case, counsel for a party to the case, or the judge presiding over the case to file his or her own affidavit in support of or in response to an affidavit of disqualification. For this reason, Deters's affidavit is stricken and will not be considered.

*Forfeiture*

**{¶ 17}** In support of his allegation that Judge Reece has created an appearance of bias, Porotsky points to the judge's vigorous questioning of him and the judge's comments alluding to the Wizard of Oz at the hearing held on May 21, 2024. Porotsky's presentation of this argument comes too late.

**{¶ 18}** Forfeiture is the failure to timely assert a right or object to an error. *State v. Rogers*, 2015-Ohio-2459, ¶ 21. Prior affidavit-of-disqualification decisions have recognized that "allegations supporting the disqualification of a judge may be forfeited if not asserted with the requisite speed and diligence." *In re Disqualification of Reed*, 2024-Ohio-6175, ¶ 22, citing *In re Disqualification of Winkler*, 2023-Ohio-698, ¶ 34. "'The affiant has the burden to demonstrate that the affidavit is timely filed.'" *Winkler* at ¶ 7, quoting *In re Disqualification of Froelich, Donovan, and Welbaum*, 2015-Ohio-3423, ¶ 5.

**{¶ 19}** Although he heard Judge Reece's comments alluding to the Wizard of Oz in May 2024, Porotsky waited until filing his affidavit of disqualification

approximately nine months later to assert them as a basis for disqualifying the judge. "When an affiant becomes aware of circumstances that the affiant believes support disqualification, an affidavit of disqualification must be filed as soon as possible." *Winkler* at ¶ 1. Porotsky did not do that, and he therefore forfeited this argument in support of Judge Reece's disqualification.

{¶ 20} This decision now turns to the merits of Porotsky's allegation of the appearance of bias.

### Disqualification of a Common-Pleas-Court Judge

{¶ 21} As explained above, R.C. 2701.03(A) provides two specific grounds and a catch-all provision for the disqualification of a judge of a court of common pleas. Granting or denying an affidavit of disqualification turns on whether the chief justice determines that the interest, bias or prejudice, or disqualification alleged in the affidavit exists. R.C. 2701.03(E).

{¶ 22} The burden falls on the affiant to submit "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations." R.C. 2701.03(B)(1). Therefore, "[a]n affidavit must describe with specificity and particularity those facts alleged to support the claim." *In re Disqualification of Mitrovich*, 2003-Ohio-7358, ¶ 4.

{¶ 23} As stated above, Porotsky alleges that Judge Reece should be disqualified to avoid the appearance of bias.

{¶ 24} "R.C. 2701.03(A) speaks in terms of *actual* bias and prejudice." (Emphasis in original.) *In re Disqualification of Berhalter*, 2023-Ohio-4881, ¶ 29. The General Assembly did not define "bias or prejudice" for purposes of the statute. However, as explained in prior disqualification cases, "[t]he term 'bias or prejudice' 'implies a hostile feeling or spirit of ill-will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *In re Disqualification of O'Neill*,

6

2002-Ohio-7479, ¶ 14, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469 (1956). "'Bias or prejudice on the part of a judge will not be presumed. In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and bias or prejudice must be strong enough to overcome the presumption of his integrity.'" *Id.* at ¶ 16, quoting 48A C.J.S., Judges, § 108, at 731 (1981). "A determination of whether a judge is biased or prejudiced is based on the judge's words and/or actions and whether those words and/or actions convey that the judge is predisposed to an outcome of a case." *Berhalter* at ¶ 28.

{¶ 25} "A judge's subjective bias, however, is not easy to discern. The United States Supreme Court has recognized that 'to establish an enforceable and workable framework, the Court's precedents [also] apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present.'" (Bracketed text in original.) *In re Disqualification of Clark*, 2023-Ohio-4774, ¶ 47, quoting *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Under an objective standard, "[t]he question is '"whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case."'" *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013), quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002), quoting *In re Kansas Pub. Emps. Retirement Sys.*, 85 F.3d 1343, 1358 (8th Cir. 1996). "'[T]hese outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" *In re Nettles*, 394 F.3d 1001, 1002 (7th Cir. 2005), quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

**Analysis**

*Ex Parte Communication*

{¶ 26} An ex parte communication is "a communication, concerning a pending or impending matter, between counsel or an unrepresented party and the court when opposing counsel or an unrepresented party is not present or any other communication made to the judge outside the presence of the parties or their

lawyers." Jud.Cond.R. Terminology. "[A]n ex parte communication between a judge and a party may be a ground for disqualification when 'the communication either was initiated by the judge or addressed substantive matters in the pending case.'" *In re Disqualification of Park*, 2024-Ohio-3184, ¶ 30, quoting *In re Disqualification of Calabrese*, 2002-Ohio-7475, ¶ 2.

{¶ 27} However, "[i]n affidavit of disqualification proceedings, the question regarding alleged ex parte communications is not whether the communication violates the Code of Judicial Conduct but whether the communication[] demonstrate[s] bias or prejudice on the part of the judge," *In re Disqualification of Saffold*, 2001-Ohio-4103, ¶ 4, or otherwise supports disqualifying the judge, such as by creating an appearance of impropriety, *Park* at ¶ 45.

{¶ 28} Porotsky asserts that Judge Reece created an appearance of bias by having an ex parte communication with Statman, Porotsky's opposing counsel. Specifically, he avers that "a mere 30 minutes after leaving the courtroom" where MedPro's motion to compel production of emails involving Deters had been discussed, Porotsky "received an email from Attorney Statman, stating that he had spoken to [Judge] Reece (in an ex parte conversation after [Porotsky] had left the courtroom) and that he was withdrawing Mr. Deters as a witness." Porotsky provided a copy of this email as an exhibit to the affidavit of disqualification. The email states, "Eric Deters will not be testifying in the recission case. I have informed the court. Your discovery issue is dead as per your representation to the court."

{¶ 29} However, the email Statman sent to Porotsky is hearsay, and "an allegation that a judge engaged in an improper ex parte communication 'must be substantiated and consist of something more than hearsay or speculation,'" *id.*, 2024-Ohio-3184, at ¶ 45, quoting *In re Disqualification of Forsthoefel*, 2013-Ohio-2292, ¶ 7. Moreover, the email is ambiguous regarding exactly who was informed

that Deters was being withdrawn as a witness; the judge says that there was no "ex parte meeting," and Porotsky avers in the affidavit of disqualification that the judge said he did not remember any ex parte communication. In any case, the question is whether the communication demonstrates bias. *Saffold* at ¶ 4. Without more, it is not possible to say that any statement Statman made to Judge Reece created an appearance of bias.

*Failure to Restrain Deters and Statman*

**{¶ 30}** Next, Porotsky asserts that Judge Reece created an appearance of bias by tolerating Deters's public comments and alleged unauthorized practice of law and Statman's allegedly unprofessional comments during hearings.

**{¶ 31}** As noted above, Porotsky requested that Judge Reece enter a gag order to prohibit Deters from making public comments or engaging in conduct promoting violence against MedPro, its CEO, or its counsel. He also asked the judge to enforce a gag order issued *in a different case*. Judge Reece found that Deters's public comments and conduct were "highly inappropriate," but he decided not to grant MedPro's requests. The judge noted that the requests implicated interests under the First Amendment to the United States Constitution and that others had publicly made the same comments Deters had made in public. Further, the judge left open the possibility of issuing a gag order if Deters's inappropriate comments or conduct continued.

**{¶ 32}** Porotsky is attempting to disqualify Judge Reece based on an adverse ruling. "'Adverse rulings, without more, are not evidence that a judge is biased or prejudiced.'" *In re Disqualification of Bickerton*, 2023-Ohio-1104, ¶ 9, quoting *In re Disqualification of Russo*, 2005-Ohio-7146, ¶ 5. "[A]lleged errors of law or procedure are legal issues subject to appeal and are not grounds for disqualification." *In re Disqualification of Light*, 36 Ohio St.3d 604 (1988). And while "'judicial decisions must be rendered in a manner that does not create a perception of partiality,'" *Clark*, 2023-Ohio-4774, at ¶ 59, quoting *In re*

*Disqualification of Murphy*, 2005-Ohio-7148, ¶ 6, Judge Reece's reasoning is not so farfetched that it could be attributed only to bias.

{¶ 33} For the same reasons, Judge Reece's decision to grant a motion on the same day Statman filed it and his denial of MedPro's motions are not disqualifying. Further, the judge's failure to rule on other motions does not, by itself, create an appearance of bias; a "'judge's determination as to how to proceed with proceedings pending before him . . . generally provides no grounds for judicial disqualification.'" (Ellipsis in original.) *In re Disqualification of Sundermann*, 2023-Ohio-4884, ¶ 25, quoting Flamm, *Judicial Disqualification*, § 15.1, at 411-412 (2d Ed. 2007).

{¶ 34} Porotsky also asserts that Judge Reece has created an appearance of bias by refusing to prohibit Deters from engaging in the unauthorized practice of law. This argument also challenges an adverse decision. But more fundamentally, unauthorized-practice-of-law complaints are heard by the Board on the Unauthorized Practice of Law, *see* Gov.Bar R. VII(2), and ultimately considered by all justices of this court, *see* Gov.Bar R. VII(18), after an independent investigation by the Office of Disciplinary Counsel, the appropriate certified unauthorized-practice-of-law committee, or the Office of the Ohio Attorney General, *see* Gov.Bar R. VII(7)(C). An affidavit-of-disqualification proceeding is not the proper forum in which to determine whether the unauthorized practice of law has occurred.

{¶ 35} Lastly, Porotsky argues that Judge Reece has created an appearance of bias by failing to prevent Statman from directing unprofessional comments at him during hearings. More specifically, he alleges that Statman made the following statements in court: "[W]e seem to get misrepresentations, lies, and cheating from [Porotsky] on a regular basis," "[H]e laces his speech, his speakings with falsehoods," "[T]here is something seriously wrong with [him]," "[He is] creating the problems here," and "[He is] a pariah even in [his] own firm."

{¶ 36} "Judges must require order and decorum in their courtrooms and cannot lose control of a case by permitting lawyers to engage in unprofessional conduct without warning or sanctioning them." *In re Disqualification of O'Grady*, 2022-Ohio-2854, ¶ 12. Statman's alleged comments are not the best examples of the civility expected of attorneys. Nonetheless, the first two statements quoted in the above paragraph were isolated remarks made at two separate hearings. And although Porotsky says that the remaining three statements were made at a January 8 "appearance, off-the-record," he has not provided the context necessary to evaluate them. Lastly, Judge Reece says that he has admonished counsel to be civil. Under these circumstances, Judge Reece's tolerating these alleged comments does not create the appearance that the judge is biased against MedPro or Porotsky.

*The Combination of Factors*

{¶ 37} Porotsky's claims, standing alone, do not establish that there is an appearance that Judge Reece is biased against MedPro. It has been recognized that "the combination of the factors cited by [an] affiant" may be sufficient to require a judge's disqualification when the individual factors by themselves are not. *In re Disqualification of Maschari*, 1999-Ohio-8, ¶ 3. But in this case, whether the evidence is considered in isolation or all together, the average person on the street who knows all the relevant facts of the case would not believe that Judge Reece's words and conduct have created the appearance of bias.

{¶ 38} For these reasons, Porotsky's allegation of the appearance of bias lacks merit.

## Conclusion

{¶ 39} Porotsky has not established that Judge Reece should be disqualified. Therefore, the affidavit of disqualification is denied. The case shall proceed before Judge Reece.

————————————