[This opinion has been published in *Ohio Official Reports* at 178 Ohio St.3d 1235.]

IN RE DISQUALIFICATION OF SKAGGS.

IN RE THE ADOPTION OF T.H., f.k.a. T.M.P.

AND

IN RE T.M.P., ALLEGED ABUSED, NEGLECTED, AND DEPENDENT CHILD.

[Cite as *In re Disqualification of Skaggs*, 2024-Ohio-6174.]

*Judges—Affidavits of disqualification—R.C. 2101.39—R.C. 2701.03—Judge's questioning of affiant concerning child's welfare during child-custody and neglect proceedings does not, by itself, support judge's disqualification— Judge's disqualification not required merely because he was the subject of a public-protest campaign against his handling of two legal matters involving the child—Disqualification denied.*

(No. 24-AP-127—Decided September 20, 2024.)

ON AFFIDAVIT OF DISQUALIFICATION in Jackson County Court of Common Pleas, Probate and Juvenile Divisions, Case Nos. 2024 AD 0013 and 2023 C 0005.

_____

KENNEDY, C.J.

{¶ 1} Dana E. Gilliland, the attorney for Jackson County Job and Family Services ("the agency"), has filed an affidavit of disqualification pursuant to R.C. 2101.39 and 2701.03 seeking to disqualify Judge Justin W. Skaggs of the Jackson County Court of Common Pleas, Probate and Juvenile Divisions, from presiding over the underlying cases. Judge Skaggs filed a response to the affidavit of disqualification.

{¶ 2} As explained below, Gilliland has not established that the judge should be disqualified. Therefore, the affidavit of disqualification is denied. The cases shall proceed before Judge Skaggs.

**Trial-Court Proceedings**

{¶ 3} On February 9, 2023, the agency filed an abuse, neglect, and dependency complaint, which resulted in the juvenile court's granting of permanent custody of T.M.P. to the agency on April 5, 2024. After the order of permanent custody was issued, the case remained in review status.

{¶ 4} T.M.P.'s foster mother filed a petition for adoption on May 15 and amended that petition two days later. In the amended petition, the foster mother stated that the agency's consent to the adoption was required. The adoption case was set for hearing in July but was continued at the foster mother's request. On July 25, the agency conducted an adoption-matching conference because other relatives of T.M.P. had expressed interest in adopting the child. The agency informed the foster mother on August 2 that it would not consent to her adoption of the child and instead would be placing the child with the child's other relatives. Judge Skaggs set a hearing for August 21.

{¶ 5} On August 7, the judge learned from the child's guardian ad litem that the foster parents were planning to move the child to Colorado, and he entered an order directing the agency to account for the child's location. He also learned that the child may have been living in unacceptable conditions in foster care.

{¶ 6} On August 8, the agency filed notice that it would not consent to the child's adoption by the foster mother. The foster mother then moved for an order finding that the agency's consent was not required for her adoption of the child. In response, the agency requested an evidentiary hearing.

{¶ 7} On August 9, Judge Skaggs held a status conference in the neglect case at which he raised concerns about the welfare of the child and the relocation of the child without notice to the court—information that the judge thought the agency had withheld from the court.

{¶ 8} On August 13, Gilliland filed the affidavit of disqualification.

**Affidavit-of-Disqualification Proceedings**

{¶ 9} Judge Skaggs presides as a probate-court judge in the adoption case, and R.C. 2101.39 provides that if a probate judge "allegedly has a bias or prejudice for or against a party or a party's counsel in a proceeding pending before the judge, allegedly otherwise is interested in a proceeding pending before the judge, or allegedly is disqualified to preside in the proceeding," then that party or the party's counsel may file an affidavit of disqualification with the clerk of this court.

{¶ 10} In addition, Judge Skaggs presides as a juvenile-court judge in the neglect case, and R.C. 2701.03(A) provides that if a judge of the court of common pleas "allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court," then that party or the party's counsel may file an affidavit of disqualification with the clerk of this court.

{¶ 11} Gilliland alleges that Judge Skaggs should be disqualified because the judge has a conflict of interest and because his presiding over the cases would present an appearance of bias and impropriety. In support of these allegations, Gilliland points to a familial relationship between the foster mother and "T. Conley," who worked at the common pleas court until late July 2024 and is the spouse of a sheriff's deputy in the same county. Gilliland also raises concerns about the judge's relationship with attorneys who routinely appear before him and who may be potential witnesses in the adoption proceeding. She states that the judge is under public pressure in the form of social-media posts, a public-records request and an article published in the local newspaper based on that request, contact from members of the public, and a prayer vigil held across the street from the courthouse.

{¶ 12} Gilliland states that Conley approached her in March 2024 and disclosed her familial relationship with the foster mother. She says that Conley asked her on a few occasions about the agency's decision-making process and the

likelihood that the foster mother—Conley's cousin—would be successful in the adoption. Gilliland also states that Conley may be a witness in the adoption case and that in the past, the judge has recused himself from cases involving court staff.

{¶ 13} As for Judge Skaggs's relationships with potential witnesses, Gilliland states that the consent hearing and the best-interest hearing in the adoption case will involve testimony from local attorneys and staff members of the agency. She contends that there is "a perception" that the judge will not be able to act independently in those proceedings based on comments the judge made during the status conference in the neglect case in which he expressed his displeasure that the agency had not provided information to the court about the condition of the foster mother's home or the location of the child. Gilliland states, "While these comments occurred in the presence of counsel, with Judge Skaggs's only expressed concern being the child's welfare, the affiant is concerned that the court has formed an opinion regarding the conduct of [the agency] from outside sources."

{¶ 14} Lastly, Gilliland points out that after the agency informed the foster mother that it would not consent to her adopting the child, the foster mother and her family started a social-media campaign to influence Judge Skaggs's decision concerning the adoption. Gilliland also notes that the judge received a public-records request regarding the neglect case and that those records were used in an article published in the local newspaper. Lastly, Gilliland says that the judge was exposed to a prayer vigil that was held across the street from the courthouse to influence the judge's decision in both the adoption and neglect cases.

{¶ 15} In response to these allegations, Judge Skaggs states that he does not have a conflict of interest and that there is no appearance of bias or impropriety that warrants his disqualification.

{¶ 16} Regarding the familial relationship between Conley and the foster mother, Judge Skaggs states that when he learned of the family connection, that information was "insignificant" to him because Conley was a deputy clerk handling

4

juvenile-division matters and her duties in the probate division were limited to issuing marriage licenses, producing certified marriage records, and maintaining guardianship deadlines. Moreover, the judge says that he was not aware that Conley had asked Gilliland about the adoption until after the affidavit of disqualification was filed. The judge contends that if Gilliland believed that the relationship between Conley and the foster mother caused him to have a conflict of interest in the cases, then Gilliland should have raised that concern when Conley first approached her to discuss the adoption. The judge admits that he met the foster mother on two occasions when he represented her ex-husband in divorce proceedings before becoming a judge.

{¶ 17} Regarding Gilliland's claims that the judge's relationships with local attorneys and potential witnesses are too close and that he has prejudged the cases, Judge Skaggs states that he is not biased for or against any of the attorneys or potential witnesses and that he has not prejudged the cases. According to the judge, Jackson County has a population of approximately 32,000 people, fewer than 15 attorneys practice law in the community, and only five of those attorneys take judicial appointments to serve as guardians ad litem. Judge Skaggs argues that familiarity with local attorneys and others who frequently appear before the court is unavoidable and is not evidence of bias. As for Gilliland's claim that the judge has prejudged the cases, Judge Skaggs admits that he raised concerns about the general welfare of the child at a status conference in the neglect case because he had not been informed about issues concerning the foster mother's home or her plans to remove the child from the state. Judge Skaggs asserts that his concerns for the general welfare of the child and about the lack of notice to the court regarding the child's potential relocation were reasonable.

{¶ 18} Lastly, Judge Skaggs contends that as for the public pressure that Gilliand asserts is being placed on him, he has not seen any social-media posts about the underlying cases and that he disabled his Facebook account when a

member of the community attempted to contact him through Facebook Messenger. The judge says that he was aware of the prayer vigil because it took place across the street from the courthouse but that he did not participate in the vigil and does not know anything that was said during it. Moreover, he took steps on that day to arrive to work early and enter the courthouse through the alley to "avoid the vigil altogether."

### Disqualification of a Common-Pleas-Court Judge

{¶ 19} As explained above, R.C. 2101.39 and 2701.03(A) each provide two specific grounds and a catchall provision for the disqualification of judges to whom the relevant statute applies. Granting or denying an affidavit of disqualification turns on whether the chief justice determines that the allegations of interest, bias or prejudice, or disqualification set forth in the affidavit exist. R.C. 2701.03(E).

{¶ 20} The burden falls on the affiant to submit "specific allegations on which the claim of interest, bias, prejudice, or disqualification is based and the facts to support each of those allegations." R.C. 2701.03(B)(1). Therefore, "[a]n affidavit must describe with specificity and particularity those facts alleged to support the claim." *In re Disqualification of Mitrovich*, 2003-Ohio-7358, ¶ 4.

{¶ 21} As stated above, Gilliland alleges that Judge Skaggs should be disqualified because of a conflict of interest and to avoid the appearance of bias and impropriety.

{¶ 22} The term "interest" is not defined in R.C. 2101.39 or 2701.03. However, the Code of Judicial Conduct requires a judge to disqualify himself or herself in any proceeding in which the judge "[h]as more than a de minimis interest that could be substantially affected by the proceeding," Jud.Cond.R. 2.11(A)(2)(c), or "[t]he judge knows that he or she . . . has an economic interest in the subject matter in controversy or in a party to the proceeding," Jud.Cond.R. 2.11(A)(3). "A 'conflict of interest' means '[a] real or seeming incompatibility between one's

6

private interests and one's public or fiduciary duties.'" *In re Disqualification of Bloom*, 2023-Ohio-3384, ¶ 38, quoting *Black's Law Dictionary* (11th Ed. 2019).

{¶ 23} R.C. 2701.03(A) "speaks in terms of *actual* bias and prejudice" (emphasis in original), *In re Disqualification of Navarre*, 2024-Ohio-3336, ¶ 21, and the same is true of R.C. 2101.39. The General Assembly did not define "bias or prejudice" for purposes of these statutes. But as explained in prior disqualification cases, "'bias or prejudice' 'implies a hostile feeling or spirit of ill will or undue friendship or favoritism toward one of the litigants or his attorney, with the formation of a fixed anticipatory judgment on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts.'" *In re Disqualification of O'Neill*, 2002-Ohio-7479, ¶ 14, quoting *State ex rel. Pratt v. Weygandt*, 164 Ohio St. 463, 469 (1956). "'Bias or prejudice on the part of a judge will not be presumed. In fact, the law presumes that a judge is unbiased and unprejudiced in the matters over which he presides, and bias or prejudice must be strong enough to overcome the presumption of his integrity.'" *Id.* at ¶ 16, quoting 48A C.J.S., Judges, § 108, at 731 (1981). "A determination of whether a judge is biased or prejudiced is based on the judge's words and/or actions and whether those words and/or actions convey that the judge is predisposed to an outcome of a case." *In re Disqualification of Berhalter*, 2023-Ohio-4881, ¶ 28.

{¶ 24} "A judge's subjective bias, however, is not easy to discern. The United States Supreme Court has recognized that '[t]o establish an enforceable and workable framework, the Court's precedents [also] apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present.'" (Bracketed text in original.) *In re Disqualification of Clark*, 2023-Ohio-4774, ¶ 47, quoting *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016). Under an objective standard, "[t]he question is "'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case."'" *United States v. Melton*, 738 F.3d 903, 905 (8th Cir. 2013), quoting

*Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002), quoting *In re Kansas Pub. Emps. Retirement Sys.*, 85 F.3d 1343, 1358 (8th Cir. 1996). "'[T]hese outside observers are less inclined to credit judges' impartiality and mental discipline than the judiciary itself will be.'" *In re Nettles*, 394 F.3d 1001, 1002 (7th Cir. 2005), quoting *In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990).

{¶ 25} Further, a judge allegedly "is disqualified" under R.C. 2101.39 or "otherwise is disqualified" under R.C. 2701.03(A) when none of the express bases for disqualification—interest, relation to a party, bias, or prejudice—apply but grounds for disqualification exist. *See Navarre* at ¶ 21. "[E]ven in cases in which no evidence of actual bias or prejudice is apparent, a judge's disqualification may be appropriate to avoid an appearance of impropriety or when the public's confidence in the integrity of the judicial system is at issue." *In re Disqualification of Crawford*, 2017-Ohio-9428, ¶ 6. In addition, an ex parte communication between a judge and a party may be a ground for disqualification when the communication "either was initiated by the judge or addressed substantive matters in the pending case." *In re Disqualification of Calabrese*, 2002-Ohio-7475, ¶ 2. Jud.Cond.R. 2.11 sets forth additional circumstances in which a judge must be disqualified, including when the matter in controversy involves the economic interests of the judge's family members, Jud.Cond.R. 2.11(A)(3), and when the judge likely will be a material witness in the proceeding, Jud.Cond.R. 2.11(A)(2)(d).

{¶ 26} These examples are not exhaustive, but they illustrate that a judge may still be disqualified under R.C. 2101.39 or 2701.03(A) even when the express statutory grounds for disqualification are not applicable.

{¶ 27} A judge may also be disqualified to avoid an appearance of impropriety. An appearance of impropriety exists when "'the [judge's] conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.'"

*Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868, 888 (2009), quoting American Bar Association, Annotated Model Code of Judicial Conduct, Canon 2A, Commentary (2004); *see also id.* at 890 (noting that the codes of judicial conduct provide more protection than due process requires). The perspective of the ordinary reasonable person is considered, and that person "is presumed to be fully informed of all the relevant facts in the record—not isolated facts divorced from their larger context." *In re Disqualification of Gall*, 2013-Ohio-1319, ¶ 6.

{¶ 28} Before addressing the affidavit of disqualification, Judge Skaggs raises a preliminary question: whether Gilliland timely filed the affidavit of disqualification based on allegations that the foster mother's relationship with a former court employee creates an appearance of bias against the agency or of impropriety. The answer to that question is no.

### Forfeiture

{¶ 29} "When an affiant becomes aware of circumstances that the affiant believes support disqualification, an affidavit of disqualification must be filed as soon as possible." *In re Disqualification of Winkler*, 2023-Ohio-698, ¶ 1. "'The affiant has the burden to demonstrate that the affidavit is timely filed.'" *Id.* at ¶ 7, quoting *In re Disqualification of Froelich, Donovan, and Welbaum*, 2015-Ohio-3423, ¶ 5. The question whether an affidavit of disqualification has been timely filed is decided on a case-by-case basis, and the question "turns on reasonableness and depends on the facts of the case." *Id.* at ¶ 35.

{¶ 30} Gilliland knew in March 2024 that Conley was an employee of the court and the foster mother's cousin. If Gilliland believed that Judge Skaggs's disqualification was warranted based on Conley's employment at the court and her familial relationship with the foster mother, then Gilliland should have raised that issue in May 2024 when the adoption case was filed, not months later and days before the August hearing. *See In re Disqualification of Corrigan*, 2000-Ohio-104, ¶ 2 (affiant forfeited objections to judge's participation in underlying case because

incidents giving rise to affiant's claim of bias occurred "several months prior to the filing of the affidavit," which was filed "less than three weeks before the scheduled trial").

{¶ 31} "Litigants and counsel alike must act with the requisite speed when raising issues of interest, bias, or prejudice or other claims of disqualification and file affidavits of disqualification at the earliest possible time." *Winkler* at ¶ 36. "A party [or counsel] should not be permitted to participate in an action or proceedings to the extent that he [or she] is able to ascertain the attitude of the judge toward important aspects of his [or her] case and then avoid an adverse ruling by belatedly raising the issue of disqualification." (Cleaned up.) *Id.* at ¶ 33.

{¶ 32} Because Gilliland failed to promptly file an affidavit of disqualification after becoming aware of the circumstances of Conley's employment and familial relationship to the foster mother that caused her to believe the judge's disqualification was warranted, the allegation of bias based on those circumstances is forfeited. Therefore, this entry will address only the remaining allegations.

**Analysis**

{¶ 33} Because Gilliland's allegations that the judge's presiding over the underlying cases would present an appearance of bias or impropriety are based on the same evidence, they are analyzed together. For the reasons explained below, Gilliland has not established that Judge Skaggs's disqualification is warranted.

{¶ 34} "Generally, the more intimate the relationship between a judge and a person who is involved in a pending proceeding, the more acute is the concern that the judge may be tempted to depart from the expected judicial detachment or to reasonably appear to have done so." *In re Disqualification of Shuff*, 2004-Ohio-7355, ¶ 6. Disqualification is appropriate when the professional relationship between a judge and a witness or a party could suggest to a reasonable person the existence of bias or prejudice. *Bloom*, 2023-Ohio-3384, at ¶ 42. In *In re*

*Disqualification of Nadel*, the chief justice disqualified all judges of a common pleas court from a case in which a defendant was charged with assaulting and kidnapping the wife and infant daughter of another common-pleas-court judge. 47 Ohio St.3d 604, 605 (1989).

{¶ 35} "However, when the professional relationship between a judge and a witness or an alleged victim is not particularly close, there is less reason to question the judge's impartiality." *In re Disqualification of Barrett*, 2017-Ohio-9435, ¶ 6. In *Barrett*, defense counsel sought to disqualify a common-pleas-court judge from a criminal case because the alleged victim worked in the courthouse. The chief justice denied the affidavit of disqualification, finding no evidence of a significant professional or personal relationship between the judge and the alleged victim that would suggest that the judge would be tempted to depart from his expected judicial neutrality. *Id.* at ¶ 7. The alleged victim was an employee of a different division of the common pleas court, the judge did not employ the alleged victim, and the judge knew the victim only vaguely as a courthouse employee. *Id.*; *see also In re Disqualification of Solovan*, 2003-Ohio-5483, ¶ 2, 7 (affidavit of disqualification denied in a case in which the defendant was charged with criminal acts against county sheriff's deputies who provided security for the courthouse and served as bailiffs).

{¶ 36} In this case, Judge Skaggs presides in a court that is in a county where approximately 32,000 people reside and only 15 members of the bar practice. Only five of those attorneys are willing to serve as a guardian ad litem in the county. The judge's familiarity with members of the local bar is a given. But familiarity with attorneys and witnesses who regularly appear before the court is insufficient to prove that the judge has a conflict of interest or that there is an appearance of bias or impropriety. *See In re Disqualification of Lynch*, 2012-Ohio-6305, ¶ 6; *In re Disqualification of Leuthold*, 2023-Ohio-4775, ¶ 23. "[J]ust as 'the reasonable person would conclude that the oaths and obligations of a judge are not so

meaningless as to be overcome merely by friendship with a party's counsel,' the objective observer would not question a judge's impartiality merely because the judge knows or has a friendly relationship with a witness." *Leuthold* at ¶ 23, quoting *Lynch* at ¶ 10.

{¶ 37} Moreover, Gilliland relies on speculation when she asserts that she is "concerned that the court has formed an opinion regarding the conduct" of the agency based on Judge Skaggs's having expressed concern over the child's welfare when the agency had not told the judge about the living conditions in the foster mother's home or about the foster mother's plans to remove the child from the state. "Speculation and innuendo are insufficient to establish bias or prejudice or the appearance of impropriety." *In re Disqualification of Celebrezze*, 2023-Ohio-4383, ¶ 93.

{¶ 38} Further, in adoption proceedings, as in other child-custody matters and cases involving abuse and neglect, "'the ultimate welfare of the child . . . is the polestar or controlling principle to be observed,'" *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App. 1974). Judge Skaggs therefore has a responsibility to every child whose case comes before him— and to the community he serves—to ensure that the best interests of the child in an adoption proceeding and in an abuse and neglect case are upheld. Judges, being in this unique position of trust, must be well informed to make critically important decisions about the care of a child in a pending case. It is therefore incumbent on a judge to make all necessary inquiries in upholding his or her role as the protector of a child's best interests. This is especially true when the judge learns that a child who is the subject of an adoption proceeding may be living in unacceptable conditions or may be removed from the state without the court's knowledge.

{¶ 39} Consequently, Judge Skaggs had a duty to ask Gilliland about things that affect the welfare of the child, even if those questions sounded critical of the job the agency was doing. A judge's decision to ask hard questions concerning a

child's welfare does not, by itself, support disqualification. "[I]n general, a judge will not be disqualified merely for . . . interrogating counsel in a confrontational tone." *In re Disqualification of Jenkins*, 2021-Ohio-4355, ¶ 9.

{¶ 40} Lastly, Gilliland states that the continued naming of the judge in the local newspaper, in a Facebook petition, in social-media posts, in the prayer vigil, and in TikTok videos "is meant to put undue pressure on Judge Skaggs and to sway a decision and remove the appearance of independence and impartiality of the court." These are the actions of others, and what others seek is not evidence of Judge Skaggs's behavior or conduct. In any case, "a judge's bias is not presumed from others' dissemination of publicity about a case or publicity attacking the judge." (Footnote omitted.) 8 *Federal Procedure, L.Ed.*, § 20:96 (2024). Therefore, the disqualification of a judge is not required just because the judge was the subject of "a very public protest campaign," *In re Disqualification of McKay*, 2013-Ohio-1461, ¶ 9. "[I]f a party were allowed to selectively disqualify a judge through what amounts to media-bullying, the very integrity and independence upon which the judiciary depends would be undermined." *Las Vegas Downtown Redevelopment Agency v. Eighth Judicial Dist. Court ex rel. Clark Cty.*, 116 Nev. 640, 645, fn. 6 (2000).

{¶ 41} The disqualification of a judge requires evidence that the judge's conduct and behavior show one of the bases for disqualification under the applicable statute. Here, there is no evidence that Judge Skaggs has acted under a conflict of interest. And a claim that there is an appearance of bias or impropriety must be supported so that a reasonable person fully informed of all the facts would believe that the judge's ability to preside over the cases would be impaired. Nothing in the affidavit supports that belief here.

{¶ 42} For these reasons, the allegations lack merit.

**Conclusion**

{¶ 43} The affidavit of disqualification is denied.  The cases shall proceed before Judge Skaggs.

———————————